ANDRUS et al v. FIDELITY MUTUAL LIFE INSUR-
ANCE ASSOCIATION, Appellant.

In Banc, March 29, 1902,

1. **Insurance: PREMIUMS: WAIVER: PROOF.** Proof of waiver of the
terms of a contract of insurance can be admitted without a special plea
of waiver. It is admissible under the general allegation of perform-
ance. The doctrine of waiver applies to all companies and persons
alike, but as to insurance contracts the waiver may be proved without
being pleaded.

2. ———: ———: ———: ———: **FOURTEENTH AMENDMENT: DIS-
CRIMINATION.** The practice of admitting proof of waiver of the
terms of an insurance policy without special plea of waiver, does
not deny the insurance companies the equal protection of the laws,
and, hence, is not in violation of the fourteenth amendment to the
Constitution of the United States, for that doctrine of waiver
is applied to all persons and companies alike; and, besides, the ob-
jection that such proof is permitted to be shown without waiver be-
ing pleaded, is a question of practice and not of right.

3. ———: **WAIVER: PLEADING: FEDERAL CONSTITUTION: DISCRIMINA-
TION: GENERAL APPLICABILITY.** Laws of States are not obnoxious to
the fourteenth amendment to the Federal Constitution if all per-
sons subject to them are treated alike under similar circumstances
and conditions, in respect to both the privileges conferred and
liabilities imposed. The practice of permitting proof of waiver with-
out specially pleading waiver obtains as to all insurance companies,
and, hence, is not obnoxious to that constitutional amendment.

4. ———: ———: **INSURANCE CONTRACTS: CLASSIFICATION.** Owing to
the nature of insurance companies and the character of their con-
tracts, they naturally and properly belong to a class unto themselves
and must be governed by laws that would be wholly inappropriate
to any other company or to any other contracts.

5. ———: ———: **EVIDENCE: MATTER FOR JURY.** Where there is some
substantial evidence of such a course of business on the part of the
insurance company as amounts to a waiver of a literal performance
of the terms of a policy as to the payment of premiums, the appellate
court will not interfere with the finding of the jury to whom the
question of waiver was submitted under proper instructions.

Andrus v. Insurance Assn.

6. ————: ————: MATTER IN EVIDENCE. A policy stipulated that a failure to pay premiums when due should work a forfeiture, and that if payment were made after the required time it could only be reinstated with the approval of the medical director and president. Some premiums were paid before they were due, some at maturity, and some at different times after they were due. When the last one fell due on November 22nd and was unpaid, the company wrote to the assured on December 8th urging her to pay it. Before this letter was received, the company received the payment on December 12th. It did not refuse to take it, neither did it mark the policy lapsed or forfeited. It at no time objected to keeping the money and did not offer to return it for more than a month after she was dead. *Held,* that these facts establish a waiver of the conditions.

7. ————: ————: ————: CONDITIONAL REVIVAL: SNARE. The fact that on receipt of the money the company had mailed the assured a receipt containing a conditional revival, to-wit, that the policy was not to be understood as revived by the payment of the premium unless the assured was in good health and free from all diseases or injuries and that the acceptance of that receipt was a warranty that such was the case, and that if it was not true the policy should be null and void, was itself a snare, the company being under legal obligation to take one horn or the other of the dilemma, either to have returned the money and declared void the policy, or it must now be held to have waived any objection to the deferred payment.

8. ————: PLEADING: WAIVER OF OBJECTION. If no objection is made in the lower court that the petition does not allege performance of the term of an insurance policy and that, hence, there could be no waiver, or proof of such waiver, no such objection can be urged on appeal.

9. ————: NECESSARY PARTIES: DECEASE OF BENEFICIARIES. An insurance policy named assured's mother and son as beneficiaries, and provided that in case of their death it should be paid to her legal representatives. *Held,* that the beneficial interests were several, and the administrator of the mother, who died before the assured, was not a necessary party to the suit, but that the mother's interest on her death passed to the estate of the assured, and the suit was properly brought by the executor of the assured and her son.

10. ————: ————: ESTOPPEL. Where an insurance company has advised that at the death of a beneficiary her interest reverted to the assured's estate, and required the claim to be made by her executor, it will not, after time for proof of loss has expired, be permitted to urge that the claim is not payable to such executor.

Appeal from Jackson Circuit Court.—*Hon. John W. Beebe,* Special Judge.

AFFIRMED.

*Chas. B. Adams* and *Wash. Adams* for appellant.

(1) The evidence of a forfeiture was conclusive and nothing in the conduct of defendant, when the attempt was made to pay the defaulted premium of November 22, 1898, tended to show a waiver of such forfeiture. The court should have directed a verdict for defendant under the evidence. Reichenbach v. Ellerbe, 115 Mo. 588; Gateman v. Ins. Co., 1 Mo. App. 300; Scheele v. Society, 63 Mo. App. 277; Yoe v. Ass'n., 63 Md. 86. The evidence offered to show waiver of the forfeiture clause of the policy growing out of defendant's previous conduct or course of dealing in receiving overdue premiums from the assured, was wholly insufficient to establish a prima facie case of waiver, justifying the submission of that issue to the jury. Lewis v. Ins. Co., 44 Conn. 73; Haydell v. Life Ass'n, 104 Fed. 718; Harvey v. Grand Lodge, 50 Mo. App. 478; Crossman v. Mass. Benefit Co., 143 Mass. 435; Easely v. Valley Ass'n, 91 Va. 162; Thompson v. Ins. Co., 104 U. S. 259; Lantz v. Ins. Co., 139 Pa. St. 559; Ins. Co. v. Rosenberger, 84 Pa. St. 373; Gateman v. Ins. Co., supra; Bacon on Ben. & Life Ins., sec. 424; Ins. Co. v. Thomas, 85 Fed. 406; Ins. Co. v. Fay, 22 Mich. 467; Smith v. Ins. Co., 63 Fed. 769; Bosworth v. Ins. Soc., 75 Ia. 582. (2) The court erred in admitting in evidence the premium receipts offered by plaintiff for the purpose of showing waiver. (a) Waiver was not pleaded, and the rule established by the Supreme Court of this State, which allows waiver to be proved, without being pleaded in actions on insurance policies, while as to all other contracts such evidence is not admitted unless pleaded, is a denial to persons issuing insurance policies in this

State of the equal protection of the law and an arbitrary and unjust discrimination against them and a violation of the fourteenth amendment of the Constitution of the United States. Railroad v. Ellis, 165 U. S. 159; State v. Hayes, 81 Mo. 574; State v. Loomis, 115 Mo. 314. The prohibitions of the fourteenth amendment refer to all the instrumentalities of the State. A rule of decision established by the Supreme Court of a State can be such a violation of the amendment as an act of the Legislature. Ex parte Virginia, 100 U. S. 339; Neal v. Delaware, 103 U. S. 397; Railroad v. Chicago, 166 U. S. 226. (b) Under the existing rule evidence of waiver was incompetent in the absence of an allegation in plaintiff's petition that all the conditions and requirements imposed upon the insured by the policy were performed by or for her. No such allegation is contained in the petition. An allegation of the performance of the conditions of the policy is the foundation of the rule. James v. Ins. Co., 148 Mo. 10; Nickell v. Ins. Co., 144 Mo. 432; McCullough v. Ins. Co., 113 Mo. 616; Ins. Co. v. Kyle, 11 Mo. 218; Russell v. Ins. Co., 55 Mo. 185; Travis v. Ins. Co., 32 Mo. App. 198; Maddox v. Ins. Co., 29 Mo. App. 198; Roy v. Boteler, 40 Mo. App. 213. (3) The judgment rendered in favor of plaintiff as executor of the estate of Laura E. Andrus is erroneous. Plaintiff was not entitled to recover in that capacity. (a) Under the terms of the policy the interest of Mrs. Hatfield in the proceeds of the policy did not revert to the personal representatives of the assured, except upon the contingency of the assured surviving both beneficiaries. Clark v. Davidson, 195 Pa. St. 137; Ringquist v. Young, 112 Mo. 32. (b) The interest of Mrs. Hatfield in the proceeds of the policy was a vested interest subject only to the contingency named in the policy, and passed at her death to her personal representatives. Packard v. Ins. Co., 9 Mo. App. 469; Ins. Co. v. Palmer, 42 Conn. 60; Voss v. Ins. Co., 44 L. R. A. 689; s. c., 49 Mich. 161; Olmstead v. Keyes, 85 N. Y. 598; Trust Co. v. Ins. Co., 115 N. Y. 152.

(c) The court erred in refusing instruction fourteen offered by defendant. It is well settled that an insurance policy is an entire contract and can not be split up into different suits. All parties in interest must be joined in one suit. Voss v. Life Ins. Co., supra; Parsons on Contracts (7 Ed.), 17; Ramey v. Smizer, 28 Mo. 310; Thieman v. Goodnight, 17 Mo. App. 435. (d) The personal representatives of Mrs. Hatfield were necessary parties to this suit. McMillan v. Wacker, 57 Mo. App. 220; Grand Lodge v. Dister, 77 Mo. App. 608.

*Scarritt, Griffith & Jones* for respondents.

(1) Instruction one, offered by defendant, was properly refused. Chadwick v. Order of Triple Alliance, 56 Mo. App. 563; Bergman v. Ins. Co., 2 Mo. App. 262; Porter v. Ins. Co., 62 Mo. App. 530; Hanley v. Life Ass'n, 69 Mo. 380; Hanley v. Life Ass'n, 4 Mo. App. 253; Stewart v. Sparkman, 69 Mo. App. 459; James v. Life Ass'n, 148 Mo. 12; Thompson v. Ins. Co., 52 Mo. 469; Harvey v. Grand Lodge, 50 Mo. App. 472. (2) The premium receipts admitted in evidence were competent, and their admission was not error. Ins. Co. v. Kyle, 11 Mo. 278; James v. Life Ass'n, supra; Railroad v. Iowa, 160 U. S. 392; Railroad v. Mackey, 127 U. S. 209; Railroad v. Henck, 127 U. S. 210; Walston v. Nevin, 128 U. S. 578; 6 Am. and Eng. Ency. of Law, p. 967. (3) The respondent, as guardian and curator of V. R. Andrus, Jr., and executor of the last will and testament of Laura E. Andrus, is entitled to to recover in this action. Schneider v. Ins. Co., 33 Mo. App. 64; Crecelius v. Horst, 78 Mo. 566; Gains v. Ins. Co., 50 Mo. 44.

MARSHALL, J.—This is an action upon a policy of insurance for $2,000 issued by the defendant on November 22, 1892, upon the life of Laura E. Andrus, payable to her mother and her son, with a proviso that if she survived the beneficiar-

ies, the policy should be payable to her legal representatives. The assured died on December 20, 1898, and her son survived her, but her mother had died previously. The suit is by the executor of her estate and her minor son by his guardian and curator. The plaintiffs obtained judgment in the circuit court, and the defendant appealed. This court has jurisdiction because the defendant invoked in the lower court the protection of the fourteenth amendment to the Constitution of the United States, and that court held that the defendant was not denied the protection of the Federal Constitution by its proceedings and judgment in this case.

The case made is this: On November 22, 1892, the defendant issued its said policy. By its terms the insured was required to pay semiannual premiums of nineteen dollars on May 22 and November 22 of each year, and it was stipulated that a failure to pay the same at such times should cause a forfeiture of the policy, and that no agent had a right to extend the time of payment of the premiums, but that if they were paid after the required times the policy could only be reinstated with the approval of one of the medical directors and of the president of the company, and then only upon application of the assured containing a statement that the assured is in good health and of any medical treatment or advice and of any sickness or complaint the assured may have had since the issuing of the policy and that the acceptance of any premium on a defaulted policy from one who had not been reinstated as aforesaid, should not be a recognition of the policy, but it should remain null and void until the assured was reinstated in the manner above set forth.

The petition, after setting out the character of the parties and the issuance and terms of the policy, the death of the assured and her mother, avers "that immediately after the death of the said Laura E. Andrus as aforesaid the plaintiffs herein gave the defendant due notice and proof of the said death, and duly and faithfully performed all the other terms,

stipulations and requirements imposed upon them by the terms of said contract of insurance," etc.

The answer pleads a forfeiture of the policy by reason of a failure to pay the premium that fell due on November 22, 1898; and further pleads that the premium was paid on December 12, 1898, to its agent in Kansas City, who remitted it to defendant at its home office in Philadelphia, where it was received on December 15, 1898, and that the president and treasurer immediately mailed receipt therefor, containing a conditional revival, that is, that the policy was not to be understood as revived by the receipt of the premium unless the assured was in good health and free from all diseases, ailments or injuries, and that the acceptance of that receipt by the assured was a warranty that such was the case, and if it was not true the policy should be null and void; that a certificate of health and application for a revival of the policy was mailed to the assured at the same time for her to execute, but which she never did; and that when the defendant learned on January 24, 1899, from the proofs of loss, that the assured was not in good health and free from disease when the premium was paid on December 12, 1898, it immediately tendered the premium to the plaintiffs, which was refused. The answer then pleads that the policy had become forfeited and void, and the defendant is not liable. It also pleads that there is a defect of parties plaintiff, in that, the administrator of the assured's mother is not a party, and then concludes with a general denial of everything not expressly admitted. The reply is a general denial.

The constitutional question arose and was brought into the case in this way. During the trial the plaintiffs offered in evidence the receipts for all the premiums paid upon the policy. The defendant objected thereto on the ground that it was incompetent and immaterial. Thereupon the plaintiffs' counsel stated that he desired by such evidence to show a waiver of the conditions of the policy as to the payment of premiums and

as to the forfeiture of the policy because of the failure to pay the premiums promptly when due. Counsel for defendant then said: "Defendant objects to any proof of waiver for the reason that the rule which allows waiver to be shown without being pleaded is confined to insurance contracts in Missouri, and for that reason the rule is a violation of the fourteenth amendment to the Constitution of the United States, and is an unjust discrimination against them and a denial of the equal protection of the law."

The court overruled the objection and the defendant saved an exception. Thereupon the plaintiff introduced the receipts of premiums which showed that the payments were made as follows: The first premium due on November 22, 1892, was paid on December 3, 1892. The second premium, due May 22, 1893, was paid on that day. The third premium, due November 22, 1893, was paid on that day. The fourth premium due May 22, 1894, was paid on that day. The fifth premium, due November 22, 1894, was paid November 20, two days before it was due. The sixth premium due May 22, 1895, was paid on May 21, 1895, one day before it was due. The seventh premium, due November 22, 1895, was paid on December 11, 1895, nineteen days after it was due, and the assured was required to sign a health certificate and application for reinstatement of the policy. The eighth premium due May 22, 1896, was paid on May 25, 1896, three days after it was due. The ninth premium, due November 22, 1896, was paid on November 20, 1896, two days before it was due. The tenth premium, due May 22, 1897, was paid on May 17, 1897, five days before it was due. The eleventh premium, due November 22, 1897, was paid on November 19, 1897, three days before it was due. The twelfth premium, due May 22, 1898, was paid on May 24, 1898, two days after it was due. The thirteenth premium, due November 22, 1898, was paid on December 12, 1898, twenty days after it was due.

The testimony further shows that the circumstances sur-

rounding the payment of these premiums were as follows: the defendant drew a draft on the assured for each premium, and sent it to a bank in Kansas City, where the assured resided, for collection, and gave the assured notice by mail a week or ten days before the maturity of the premium that the draft had been drawn. No such notice was ever received by the assured or by any one for her, as to the last premium. Her husband had always paid the premiums. The National Bank of Commerce of Kansas City was then, and had been for some time prior thereto, the agent of the defendant for the collection of its premiums. Her husband had an account in that bank, and had an arrangement with the bank, that whenever any drafts came for the premiums, the bank should pay them out of his deposit and charge them to his account, and the bank had done this several times prior to November 22, 1898. When this premium fell due the husband was away from Kansas City. On his return, which was about December 11, he learned that no notice of the draft for this premium had been received, and the premium had not been paid. So on December 12, he gave the money for this premium and also for the premium on a policy on his own life, which was due about that time, to his friend, Mr. Witten, and asked him to go to the bank and pay the premiums. This Mr. Witten did, and received from the bank the following receipt: "Received of J. L. Andrus, $19 to be remitted to the Fidelity Mutual Life Association, for the payment of her premium due November 22, 1898, on policy No. E36675, the same having become past due and returned to the company." This receipt was dated December 12, 1898.

In the meantime, however, the company, knowing that the premium due November 22, 1898, had not been paid, sent the following letter to the assured:

"December 8, 1898.

"In re Policy No. E36675.

Mrs. Laura F. Andrus, Kansas City, Mo.

"Dear Sir:—

"As you have evidently overlooked the payment of the semiannual premium of $19, due November 22, on your policy of the above number, I trust that you will remit this amount at your earliest convenience, or the quarterly rate of $9.78, with the enclosed health certificate duly signed, according to the terms of the contract.

"Never lapse an insurance policy in a good company, as it becomes more valuable with every payment made. If you do not thoroughly understand your policy, the advantages and security afforded by it, let me know, and it will always be my pleasure to give you a full explanation. You can not obtain a more favorable and secure contract of insurance than the one you have under this policy.

"Yours truly,

"L. G. FOUSE, President."

This letter was received by the husband of the assured on December 19, 1898. His wife never saw it, and never signed the health certificate referred to therein. She was taken sick on December 6th, and for the first five or six days was not regarded as seriously ill, but a pelvic abscess developed, she was operated on, and died from blood poisoning on the twentieth of December. The defendant was notified of the death, and furnished blank proofs of loss, and directed that as the mother of the assured was dead, her share reverted to the estate of the assured, and hence the claim should be made by the administrator or executor of the assured's estate and the guardian of the minor child. All of which was done.

The evidence further developed that there was an unwritten custom between the company and its collecting agents to allow three days of grace for the payment of premiums,

which was afterwards extended to seven days grace, and that the agents were allowed a discretion to allow this time if in their judgment the assured was still in good health.

The fact was also shown that though the policy contained the provision for forfeiture for failure to pay premiums promptly, and that though the company issued what was called a conditional receipt when premiums were paid after they were due, which recited that the policy was not thereby reinstated, and could only be reinstated upon the assured signing the health certificate and then only by the president and a medical director, still, the policies were not in fact marked "lapsed" under such circumstances, and the policy in this case never was so marked, or treated as forfeited by reason of failure to make prompt payment of premiums or for any other reason.

The case was submitted to the jury upon an instruction properly defining what would constitute a waiver of the terms of the policy requiring prompt payment of premiums, and leaving the jury to find the facts.  A verdict was rendered for the plaintiffs, and the defendant appealed.

I.

For over fifty years the practice has obtained in this State in suits upon insurance policies, to admit proof of waiver without requiring the waiver relied on to be alleged in the pleadings.  [Ins. Co. v. Kyle, 11 Mo. 278; Russell v. Ins. Co., 55 Mo. l. c. 593; McCullough v. Ins. Co., 113 Mo. l. c. 616; Nickell v. Ins. Co., 144 Mo. l. c. 432; James v. Ins. Co., 148 Mo. l. c. 10.]  And this, too, notwithstanding a recital in the policy that no waiver or change or alteration of the terms of the contract shall be binding, unless it is in writing, signed by the president, and that no agent shall have the right to waive the terms of the policy, and notwithstanding that the policy recites that the payment of premiums after they be-

come due shall be "considered as an act of grace or courtesy, and forms no precedent in regard to future payments," or that such payments shall not have the effect of reinstating the policy. Such proofs have always been admitted under an allegation of performance of the terms of the policy by the assured. That is, if such terms of the policy have been waived by the conduct and course of business of the company, they no longer constitute any part of the policy, and hence, the allegations of performance covers all that the assured is required to make. As was pointed out in James v. Insurance Co., 148 Mo. l. c. 11, a waiver is held to arise under such circumstances in many of the States of the Union besides Missouri.

Now for the first time it is contended that the practice allowing proof of waiver without an allegation of waiver in the pleadings violates the fourteenth amendment to the Constitution of the United States, because it denies to insurance companies the equal protection of the law, inasmuch as this practice does not obtain as to waiver of any other kind of a contract.

It will at once be observed that it is not contended, and is not true, that the doctrine of waiver is applied to insurance companies and their contracts, and is not applied to individuals or other companies and their contracts. For the fact is, that the doctrine and principle of waiver is applied to all persons and companies alike. The objection goes only to a question of practice, and not to a question of right.

The provision of the Constitution of the United States invoked was not intended to control or regulate mere matters of practice in the State courts, but was intended to secure the same—an equal—protection to every person or company in a class, that is accorded to every other person or company in the same class.

"When legislation [and in like manner judicial administration] applies to particular bodies or associations, imposing

upon them additional liabilities, it is not open to the objection that it denies to them the equal protection of the laws, if all persons brought under its influence are treated alike under the same conditions." [Railroad v. Mackey, 127 U. S. l. c. 209; Railroad v. Herrick, 127 U. S. 210; Walston v. Nevin, 128 U. S. 578; Hayes v. Missouri, 120 U. S. 68; Railroad v. Humes, 115 U. S. 512; Wurts v. Hoagland, 114 U. S. 606; Dow v. Beidelman, 125 U. S. 680; Missouri v. Lewis (Bowman's case), 101 U. S. 22; Turnpike v. Sandford, 163 U. S. 578; Railroad v. New York, 165 U. S. 628; Brass v. North Dakota, 153 U. S. 391; Lowe v. Kansas, 163 U. S. 81; Duncan v. Missouri, 152 U. S. 377; Cotting v. K. C. Stock Yards Co., 79 Fed. 679.]

Thus laws relating to railroads as a class, and making them liable in a different manner or for matters for which other companies or individuals are not liable, or prescribing different modes of procedure against them from those prescribed in cases against other companies; laws for the government of municipalities; for opening and improving streets, for irrigation and drainage; for liens in favor of mechanics and not in favor of other persons; requiring railroads to be fenced; for killing stock by railroads; fellow-servant laws applied to railroads and not to other persons; creating a liability (criminal as well as civil) for bank officers of an insolvent bank or of a trust company or building association, to receive deposits or money, and making the failure prima facie evidence of their knowledge of such insolvency, while such liability is not provided as to officers of any other kind of a company, are all held not to be obnoxious to the fourteenth amendment to the Federal Constitution, "if all persons subject to it are treated alike under similar circumstances and conditions in respect to both the privileges conferred and the liabilities imposed." [Railroad v. Mackey, 127 U. S. l. c. 209; Railroad v. Humes, 115 U. S. 512, and cases cited.]

The practice challenged in this case, obtains as to all insur-

ance companies, and hence, is not obnoxious to the fourteenth amendment to the Federal Constitution.

Neither does this practice violate any rule laid down by this court in State v. Loomis, 115 Mo. 307, or any rule announced by the Supreme Court of the United States in Ex parte Virginia, 100 U. S. 339; Railroad v. Ellis, 165 U. S. 159; or Railroad v. Chicago, 166 U. S. 226.

For the classification of insurance companies and their contracts is no more an arbitrary classification than is the classification of railroads. On the contrary, by reason of the nature of the business insurance companies conduct, by reason of the character of their contracts, which may last for the life of the assured or may terminate any year or any quarter, by reason of the common experience of mankind with reference to the manner the contracts of such companies are secured, and the company's manner of dealing with the assured while he lives and with the beneficiaries after the death of the assured, such companies and such contracts naturally and properly belong to a class unto themselves, and must be governed by laws that would be wholly inappropriate to any other company or any other contracts.

The wisdom and necessity of such a classification and of the practice here challenged is fully attested by the fact that it has obtained for over fifty years, that it has met the approval of the bench, the bar and the people, and that no insurance company has ever before called its propriety or constitutionality into question.

Under this practice an insurance company is fully charged with notice that it must come into court prepared to meet proof of waiver, without waiver being charged in the petition or pleadings. And this defendant did come into court prepared for this proof in this case, just as fully as if it had been charged in the pleadings. For it set out all the facts about the payment of the last premium, upon which it claimed the forfeiture had been declared, and took the depositions of all

its officers as to its course of business with reference to for-
feiting policies for failure to pay premiums promptly.    There-
fore, the defendant not only knew the rule and practice that
for so long a time had been applied to all insurance com-
panies, but it prepared for trial according to that established
practice.

Without further elaboration, enough has been said  to
show that the contention of the defendant that the protection
of the fourteenth amendment to the Constitution has been
denied to it, is untenable.

## II.

It is next insisted that the evidence is not sufficient to
show a waiver.

There is unquestionably *some substantial* evidence of such
a course of business as to. amount to a waiver, and this being
so, and the court having submitted the question of fact to
the jury, under proper instructions, this court will not inter-
fere with the finding.    [James v. Ins. Co., 148 Mo. l. c. 16.]

The evidence shows that some of the premiums were paid
before they were due, some at maturity, and some at different
times after they were due.    When the last premium, due No-
vember 22, 1898, fell due and was unpaid, the company, on
December 8, 1898, wrote to the assured reminding her that
it had not been paid, and urging her to pay.    Before this
letter reached her, however, the company on December 12,
1898, received the payment.    It did not refuse to take it.    It
did not mark the policy lapsed or forfeited.    It never objected
to keeping the money and never offered to return it until more
than a month after she was dead.    Then it was too late to
take such a position.    The conditional receipt in use by the
company is a snare in itself.    It acknowledged receipt of the
money.    It keeps the money.    But it says the policy is not
reinstated by the acceptance of the money and shall continue to

be null and void until the health certificate is filed, and until the president and medical director determine to reinstate the policy. The company must take one horn of the dilemma or the other. It can not retain the benefits and deny the existence of the contract. If it does not wish the receipt of the premium to have the effect in law of reinstating the policy or of preventing a forfeiture, it must refuse to receive the money until the health certificate is filed and until the president and medical director act.

## III.

It is next insisted that the petition does not allege performance and hence there could be no waiver or proof thereof.

No such objection was made in the lower court, and hence no such position can be taken in this court. But aside from this the petition does allege performance. The defendant construes the allegation in the petition in regard to performance to refer to what was done after the death and not before. Such a construction is too narrow. The allegations of the petition in reference to performance are sufficient to make the petition good after verdict, and in addition the sufficiency of the petition was not called in question by a motion in arrest.

## IV.

Finally it is argued that the administrator of the assured's mother is a necessary party plaintiff. This position is untenable. The policy provided that it should revert to the estate of the assured in case of the death of the beneficiaries. One of the beneficiaries, the mother, died before the assured. After the death of the assured, the company construed it to mean that the interest of this beneficiary reverted to the estate of the assured, while the interest of the minor son remained in him, and accordingly the company required the claim to be made by the

administrator or executor of the deceased and the guardian of the minor son, and the proofs of loss to be furnished by them. This was done. It is too late for the company now to say this was not proper or sufficient. For if it could be heard to interpose such a defense, it might then say no proper proofs of loss or claim had been made by the mother's administrator, and thus defeat a recovery as to one-half of the policy, if the interest of the beneficiaries was several and separate. On the contrary, if the beneficial interest is joint, then upon the death of one the whole interest passes to the survivor. [Crecelius v. Horst, 78 Mo. 566; Schneider v. Ins. Co., 33 Mo. App. 64.]

However, the construction placed upon this policy by the defendant immediately after the loss, is the proper construction. The beneficial interests were several. The policy provided that if the beneficiaries died before the assured the benefits should go to the legal representatives of the assured. As the beneficial interests were several, the interest of the mother passed at her death to the legal representatives of the assured, while the beneficial interest of the son remained in him.

The judgment of the circuit court is right and is affirmed. All concur.