REED, Respondent, v. BANKERS UNION OF THE WORLD, Appellant.

St. Louis Court of Appeals, January 8, 1907.

1. MUTUAL BENEFIT SOCIETIES: Forfeiture for Non-Payment: Waiver. Waiver as applied to conditions of forfeiture of a benefit certificate in a fraternal beneficiary order means the intentional abandonment or relinquishment by the order of a known right in respect to such condition.

2. ———: ———: ———: Retaining Dues Paid out of Time. The by-laws of a fraternal beneficiary order provided that failure to pay dues on or before the first day of every month would cause the member so failing to stand suspended, and a member paid two monthly installments of dues after the first of the month, which dues the supreme secretary of the order retained, notifying the delinquent member that a health certificate was necessary under the by-laws in order that the member might be reinstated. The health certificate was never sent. *Held*, retaining the dues pending the procurement of the health certificate was a waiver of the forfeiture.

3. ———: ———: ———: Agency. In an action on a benefit certificate in a fraternal beneficiary order, where it was shown that the supreme secretary of the order under the by-laws was the general agent of the order to receive premiums and reinstate policies which might become forfeited, and no by-laws prohibited such secretary from waiving a forfeiture, a finding by the trial court that such secretary had authority to waive a forfeiture for non-payment was authorized.

Appeal from Greene Circuit Court.—*Hon. James T. Neville*, Judge.

AFFIRMED.

*G. G. Lydy* for appellant.

(1) By the express terms of the benefit certificate in this case, the policy, the articles of incorporation, constitution and by-laws, rules and regulations of the defendant, and the application for membership, including the physician's report, constitute the exclusive contract between the defendant, the member, and the beneficiary. And members of a fraternal association are conclusively presumed to know its laws. Harvey v. Grand Lodge, 50 Mo. App. 472; Coleman v. Knights of Honor, 18 Mo. App. 189; Grand Lodge v. Elsner, 26 Mo. App. 108; Bacon on Benefit Societies, sec. 81. (2) There is no evidence of any waiver of the forfeiture. The letters of secretaries Drake and Burdock show conclusively the May and June payments were not credited, and each requested, before this could be done, that Mrs. Reed furnish the health certificate required by the laws of the order. Lyon v. Supreme Assembly, 26 N. E. (Mass.) 236; Brotherhood's Case, 31 Beav. 375; Burbank v. Association, 144 Mass. 437; McCoy v. Church, 152 Mass. 272; Baxter v. Ins. Co., 1 Allen 294; Evans v. Ins. Co., 9 Allen 329; Hale v. Ins. Co., 6 Gray 169, 66 Am. Dec. 410; Brewer v. Chelsea, 14 Gray 203; Mulroy v. Ins. Co., 2 Allen 116; Sweet v. Society, 78 Me. 541; Priest v. Ins. Co., 3 Allen 604; Behler v. Ins. Co., 68 Ind. 354; Ins. Co. v. Earle, 33 Mich. 150; Mulroy v. Ins. Co., 4 Allen 116.

*O. T. Hamlin* for respondent.

The company cannot hold the money, until after they are notified of the death of the insured, and then declare forfeiture. The case of Andrus v. The Fidelity Mutual Life Insurance Association, 168 Mo. 151, is absolutely decisive of all points raised or involved in this case. The court, sitting as a jury in the trial of this cause, found, from the evidence, that there was a waiver,

by the defendant in this matter, and there being substantial evidence to support that finding, this court will not interfere. James v. Ins. Co., 148 Mo. 16; Andrus v. Ins. Co., 168 Mo. 165.

STATEMENT.—This action is on policy No. 69082 for the sum of one thousand dollars, issued by defendant, insuring the life of Helen M. Reed for the benefit of plaintiff, who was her husband. Mrs. Reed died June 9, 1904. The petition alleges, and the answer admits, that defendant is a fraternal beneficiary order, incorporated and having its chief office in the city of Omaha, in the State of Nebraska. The answer also admitted the issuance of the policy sued on, and pleaded, as a special defense, that the policy was forfeited on account of the failure of Helen M. Reed to make payments of her regular monthly dues on the first day of May and June, 1904, as required by the constitution and by-laws of the order which formed a part of the contract. Section C, Division 5, of the by-laws read in evidence is as follows:

"Provides that on the first day of each month the regular monthly dues, Supreme Lodge per capita tax, and premiums are due and payable from each member of the Bankers Union. No notice of these regular payments of dues, per capita tax and premiums is required. Any member failing to pay the same, on or before the first day of the month, shall stand suspended. And such suspension shall date from the time such payment shall become due. During such suspension, his policy shall be null and void. Should any member pay Supreme Lodge dues and premiums to the secretary, due during any month, at a later day than the first day of the month, the separate report shall be made, giving the date and amount so paid, and sending in the names of such members for reinstatement. Such members must furnish a health certificate satisfactory to the Supreme

President or Supreme Secretary before they can be reinstated."

Section C, division 8, of the by-laws, providing that any member who shall fail to pay his premiums, per capita tax, or his dues as required, shall stand suspended, and during such suspension his policy shall be null and void, was also read in evidence, as were the following:

Section B, same division, which provides "that any member suspended for non-payment of premium or dues, wishing to be reinstated, if in good health, and not engaged in any of the prohibited occupations, shall make application for reinstatement, and pay all arrearages of every kind within sixty days from the date of suspension. But the member cannot be reinstated or any liability created by any subsequent payment made while the member is not in good health. A certificate of good health must be furnished to and accepted by the supreme secretary, and a certificate of reinstatement issued by him before such reinstatement shall be valid."

Section F, division 9, provides "that in case no lodge is accessible the member may remit his benefit premiums and general fund dues direct to the supreme office, when a receipt therefor shall be issued to him which shall have the same effect as if same payments have been made to the lodge of which such person is a member. But such payments must reach the supreme office within the same limit of time in which the members are required to pay the local secretary."

The subordinate lodge of the order (Fair Grove No. 140) of which Helen M. Reed was a member, was suspended prior to April, 1904. In May and June Mrs. Reed was sick and she and her husband directed their nephew, George T. Hines, to transmit the monthly dues to the supreme secretary at Omaha. The dues were seventy cents per month. For the month of May, 1904, a remittance was made on May 8th but was not received

until the twentieth; for the month of June, the dues were sent to the supreme secretary on the sixth of the month. F. H. Drake was supreme secretary from May 11th to June 15, 1904, and on June 7, 1904, wrote Mrs. Reed as follows:

"Mrs. Helen M. Reed,
    "Fair Grove, Mo.

"Dear Madam: Your remittance of seventy cents received here on May 20th. I find it is somewhat late for your assessment, and ask that you kindly sign the inclosed health certificate and return, so that we may give you credit for this remittance.

"Yours very truly,
        "F. H. DRAKE,
        "Supreme Secretary."

This letter was received by plaintiff, who testified that he also received a receipt for the May assessment.

Miss Margaret Murdock, who succeeded Drake as supreme secretary, testified that she has the custody of the books, showing the accounts of members that have paid direct to the home office, and those records show the May payment by Helen M. Reed was received at the home office on May twentieth, and that that payment was for the month of May; that the company received Helen M. Reed's dues for the month of June, same year, 1904, on the sixth day of June. Miss Murdock also testified that she notified Mrs. Reed that as her payments came subsequent to the first day of each month, it would be necessary for her to execute and return a health certificate; that her letter to Mrs. Reed, notifying her the company required a health certificate, bore date of June 28th, and that there never was a health certificate received from Helen M. Reed, and on June 29th she returned George T. Reed the two payments of dues of May and June.

On June 25, 1904, Miss Murdock wrote the following letter to insured:

"Mrs. May Reed,

"Fair Grove, Mo.

"My Dear Madam: In checking up remittances that have been received in the past thirty days, and which would have been acknowledged before this time, and owing to the fact that we have been remodeling our offices, repairing, etc., we have needed to allow our business to stand except just what demanded immediate attention. We find your payment of seventy cents for the month of June, also find that your May payment was held awaiting the signing by you of a health certificate, and if you will kindly sign it and return to us at once, we will see that you are credited for both months, for which you have made remittance.

"Yours very truly,

"M. Murdock."

This letter plaintiff also received.

Miss Murdock further testified that she returned the assessments of May and June, amounting to one dollar and forty cents, to plaintiff, by inclosing the amount in postage stamps in a letter, which she addressed to plaintiff at his post office (Fair Grove, Missouri), and put in the mail. Plaintiff testified he never received this letter and that the dollar and forty cents was never paid or tendered to him. The cross-examination of Miss Murdock by the court (to whom the issues were submitted, without the aid of a jury) indicates that it had some doubt of the correctness of Miss Murdock's evidence, in regard to the return of the one dollar and forty cents; for while she was quite positive she inclosed the dollar and forty cents in stamps in a letter and mailed the letter to plaintiff, she testified from certain memoranda which indicate that she may have been mistaken. This witness also testified that she mailed a blank health certificate to Mrs. Reed. Mrs. Reed was a consumptive and hence was unable to sign a certificate of good health, and neither of the certificates mailed to

her by Drake or Miss Murdock were ever signed or re-
turned to defendant. According to Miss Murdock's tes-
timony, neither the May nor June assessments were ever
credited on the defendant's books.

In respect to the duties of the supreme secretary,
the by-laws provide:

"1. He shall issue and deliver a receipt for all
moneys received by him, and retain stubs of the same,
which shall be submitted to the Auditing Committee,
and thereafter be kept subject to the order of the Board
of Directors.

"2. He shall issue and deliver all orders on the
Supreme Banker, and retain stubs of the same, which
shall be submitted to the Auditing Committee, and
thereafter be kept subject to the order of the Board of
Directors.

"3. He shall, as soon as received and credited on
his books, forward to the Supreme Banker all moneys
received by him, and shall take his receipt for the same.

"4. He shall, as soon as he has knowledge of any
suspension, mail to the suspended member a notice of
suspension, with instructions how to become reinstated,
which notice, however, shall not be construed as a part
of the process of suspension or reinstatement."

At the close of the evidence, defendant moved the
court to grant certain declarations of law, one of which
was in the nature of a demurrer to plaintiff's evidence.
The court refused to declare the law as requested by
defendant and no other declarations of law were asked
or given. The court found for plaintiff and rendered
judgment in his favor for the amount of the policy.

BLAND, P. J. (after stating the facts).—Plaintiff
maintained on the trial, that defendant received and
kept the May and June assessments on the policy. De-
fendant introduced evidence tending to show that these
assessments were temporarily retained for the purpose of
giving Mrs. Reed credit for them and reinstating her and

the policy, on condition that she would sign and return a certificate of good health in proper form, and that as soon as it was ascertained that Mrs. Reed was dead, it returned the amount of the assessments to plaintiff. The learned trial judge found that defendant did not return the assessments, and as there is some substantial evidence in support of this finding, we are bound by it in disposing of the case on this appeal. On the assumption that defendant's supreme secretary received and retained the May and June assessments, and that it has not at any time returned or offered to return them, or either of them, to plaintiff, the question which arises for decision, is whether or no defendant, by its conduct, waived a compliance, by Mrs. Reed, with the requirements of section B, division 5, of the by-laws, that is, waived its right to suspend her as a member of the order and to forfeit the policy. "A waiver is indeed the intentional abandonment or relinquishment of a known right," quoting from West v. Platt, 127 Mass. 372; Fulkerson v. Lynn, 64 Mo. App. l. c. 653; Fraser v. Aetna Life Ins. Co., 90 N. W. l. c. 481; United Firemen's Ins. Co. v. Thomas, 82 Fed. l. c. 408; Knarston v. Ins. Co., 124 Cal. 74.

Bishop says, "Waiver is where one in possession of any right, whether conferred by law or by contract, and of full knowledge of the material facts, does or forbears the doing of something inconsistent with the existence of the right or of his intention to rely upon it; thereupon he is said to have waived it, and he is precluded from claiming anything by reason of it afterward." [Bishop on Contracts, sec. 792.]

In First National Bank of Los Angeles v. Maxwell, 123 Cal. 360, quoting from Ross v. Swan, 7 Lea 467, it is said: "To make out a case of abandonment or waiver of a legal right there must be a clear, unequivocal and decisive act of the party showing such a purpose, or acts amounting to an estoppel on his part."

In Titus v. Ins. Co., 81 N. Y. *419, it is said: "When there has been a breach of a condition contained in an insurance policy, the insurance company may or may not take advantage of such breach and claim a forfeiture. It may, consulting its own interests, choose to waive the forfeiture, and this it may do by express language to that effect, or by acts from which an intention to waive may be inferred, or from which a waiver follows as a legal result."

In Andrus v. Insurance Assn., 168 Mo. 151, 67 S. W. 582, where the facts were very similar to those in the case at bar, the court, speaking through MARSHALL, J., at pages 165-6, said: "It (the insurance company) did not refuse to take it (the premium). It did not mark the policy lapsed or forfeited. It never objected to keeping the money and never offered to return it until more than a month after she was dead. Then it was too late to take such a position. The conditional receipt in use by the company is a snare in itself. It acknowledged receipt of the money. It keeps the money. But it says the policy is not reinstated by the acceptance of the money and shall continue to be null and void until the health certificate is filed, and until the president and medical director determine to reinstate the policy. The company must take one horn of the dilemma or the other. It cannot retain the benefits and deny the existence of the contract. If it does not wish the receipt of the premium to have the effect in law of reinstating the policy or of preventing a forfeiture, it must refuse to receive the money until the health certificate is filed and until the president and medical director act."

The defendant not only received and kept the May assessment, for the non-payment of which when due, it might have claimed a forfeiture, but it also received and kept the June assessment, notwithstanding it had not received a health certificate signed by Mrs. Reed. This conduct is inconsistent with an intention on the part

of defendant to insist upon a forfeiture, but is consistent with an intention to waive it, and we think the trial court did not err in finding there was a waiver. In this view of the case, defendant's refused instructions, whether good or bad, are of no importance in deciding the case. But it is contended by defendant that the supreme secretary was without power to waive a forfeiture of the policy. As shown by the by-laws of defendant, the supreme secretary was its general agent to receive premiums from subordinate lodges and also from individual members, who were not members of a subordinate lodge, and to reinstate policies which might become forfeited for the failure of the holder to pay his assessments on the first day of each month, and no by-law was read in evidence expressly prohibiting the supreme secretary from waiving a forfeiture for delay in the payment of monthly dues, nor any by-law from which a denial of the power to waive can be inferred. The whole matter of reinstating policies which might be forfeited on account of the failure of members to make timely payments of their assessments was entrusted solely to this officer, and it is a reasonable deduction, that to waive a forfeiture on account of delay in the payment of the monthly dues was within the scope of his general agency.

In Knarston v. Ins. Co., supra, it is said: "A general agent of a life insurance company may waive the conditions of a policy, and extend the time of payment of a premium unless specially restricted by limitations and instructions communicated to parties dealing with him. The waiver of conditions is within the apparent scope of his authority in the absence of notice to the contrary to the insured."

On the facts as found by the learned trial judge, we think there is ample evidence to show a waiver of the forfeiture of the policy. The judgment is affirmed. All concur.