PAULINE N. WILSON, RESPONDENT, v. ILLINOIS LIFE INSURANCE COMPANY, APPELLANT.*

Kansas City Court of Appeals.   May 9, 1927.

*Corpus Juris-Cyc References: Insurance, 32CJ, section 7, p. 977, n. 46; section 336, p. 1205, n. 79; Life Insurance, 37CJ, section 87, p. 409, n. ,60; section 193, p. 475, n. 21; section 197, p. 477, n. 54; section 270, p. ,538, n. 8, 12; Waiver, 40Cyc, p. 253, n. 46.

*L. E. Thompson* for respondent.

*Hugh T. Martin* and *W. B. Norris* for appellant.

FRANK, C.—This suit is upon a life insurance policy in the sum of $3000 issued September 13, 1920, by the defendant upon the life of Katherine K. Lukashavoc in favor of plaintiff, Pauline N. Wilson as beneficiary. At the time the policy was issued the beneficiary's name was Pauline N. Lukashavoc and she was so named in the policy. There was a verdict and judgment in favor of the plaintiff in the sum of $3502.88 and defendant appeals.

The case was tried below without a jury upon an agreed statement of facts. From the agreed stipulation it appears that defendant is a corporation organized under the laws of the State of Illinois with its home office in the city of Chicago. The policy in suit was issued by defendant at its home office in Chicago, Illinois, and delivered to and accepted by deceased in the State of Kansas where she resided at that time. Quarterly premiums in the sum of $25.92 became due and payable on the policy on the 13th day of September, December, March and June of each year. The policy was issued in 1920 and all premiums for the first and second years thereafter were paid. The quarterly premium falling due on September 13, 1922, was not paid on that date. At the request of deceased the time of payment of this premium was extended to November 1st of that year, and deceased executed a note covering the amount of this quarterly premium, payable to the order of defendant and due November 1, 1922. This note among other things recites,

"I understand and agree that neither this note nor any extension thereof is given or accepted as a payment of said premium and I agree that the nonpayment of this note or any extension thereof at maturity shall *ipso facto* lapse said policy and there will be due hereon the amount that bears the same ratio to the premium, on account of which this note is given. that the period of time elapsing from the due date of said premium to the date of default in payment of this note (or any extension thereof) bears to the period covered by the premium mentioned above."

After the policy was issued, deceased moved to the State of Iowa and was residing there at the time she executed this note. The note was mailed to defendant at its home office in Chicago, Illinois, and was there received and accepted by defendant. It is stipulated in the agreed statement of facts that this note does not violate either the laws of Iowa or Illinois. On October 21st defendant notified deceased that the note would be due on November 1, 1922, and if not paid on or before that date her policy would lapse. The note was not paid on its due date and defendant entered on its records that fact that the policy had lapsed.

On November 14th defendant notified deceased by letter that her policy had lapsed and enclosed an application for reinstatement and suggested that she make application for reinstatement and send check for past due premium note. On November 24 defendant notified deceased by letter that it would consider her application for reinstatement upon a cash payment of $13 on her past due premium note and upon approval of her application for reinstatement would extend the time for payment of balance due on premium note to January 1, 1923. On December 8 deceased wrote defendant from Shenandoah, Iowa, enclosing check for $13 and promised to pay balance due on note on or before January 1. Defendant reinstated the policy and extended the time for payment of balance due on the note to December 30, 1922. On December 15 defendant notified deceased that the time of payment of balance due on premium note was extended to December 30, and that another quarterly premium was due December 13 and it would be necessary to pay the note in full on or before December 30 and arrange to pay the December premium before the expiration of the days of grace, January 13, 1923. On December 20, 1922, defendant notified deceased that the balance due on her premium note amounting to $13.25 would be due on December 30, 1922, and if not paid on or before that time her policy would lapse. Deceased did not pay the balance on the note when due and defendant entered upon its records that the policy had lapsed.

On January 10, 1923 defendant notified deceased by letter that her policy had lapsed on account of nonpayment of the premium note and enclosed blank application for reinstatement and suggested that she sign and return the application with check for $13.75 balance due on premium note. On January 17, deceased executed the application for reinstatement and forwarded same together with her check for $13.75 to defendant. Defendant received the check and application for reinstatement, but held the check without cashing it awaiting further action by deceased. On January 19, 1923, defendant wrote deceased acknowledging receipt of application for reinstatement and check for $13.75 and stated to deceased that it was not in a position to consider her application for rein-

statement or apply her check in settlement of the premium note for the reason that she had made no provision for paying the quarterly premium of $25.92 which fell due on December 13, 1922, and stated that a note was enclosed for $25.92 falling due on February 13. 1923, and that on receipt of same her application for reinstatement would be given consideration. On January 29, 1923, defendant again wrote deceased calling her attention to the note which had been sent her on January the 19th for the purpose of extending the time of payment of the quarterly premium due on December 13, requesting her to sign said note and return same immediately. Deceased made no reply to defendant's letters of January the 19th and 29th. Again on February 13, 1923, defendant wrote deceased calling her attention to the fact that she had not executed the note for $25.92 to cover the premium due December 13, 1922, and enclosed another note due March 13, 1923, and requested her to execute same in order that defendant might give her application for reinstatement consideration. Deceased did not reply to this letter and did not execute any of the notes sent her by defendant covering the premium due December 13, 1922. This premium was never paid.

Deceased died on or about February 15, 1923, at Shenandoah, Iowa. On February 17, 1923, a Mr. Pippert on behalf of the beneficiary notified defendant of her death and requested blank proofs of loss which defendant refused to furnish. Later an March 12 the beneficiary advised defendant of the death of her sister and requested blank proofs of death. Defendant refused to furnish blank proofs of death as requested and on March 17, 1923, returned the check in question to the beneficiary.

Defendant requested the court to declare that under the pleadings and evidence the finding must be for the defendant, which declaration, the court refused.

Contention is made by respondent that the policy in suit is a Kansas contract and that the statutes of that State relative to the cancellation or forfeiture of insurance contracts for nonpayment of premiums, is as much a part of the policy as though written therein. This statute reads as follows:

"It shall be unlawful for any life insurance company other than fraternal doing business in the State of Kansas to forfeit or cancel any life insurance policy on account of the nonpayment of any premium thereon, without first giving notice in writing to the holder of any such policy of its intention to forfeit or cancel the same.

"Before any such cancellation or forfeiture can be made for the nonpayment of any such premium the insurance company shall notify the holder of any such policy that the premium thereon, stating the amount thereof, is due and unpaid, and of its intention to forfeit or cancel the same, and such policyholder shall have the right, at any

time within thirty days after such notice has been duly deposited in the post office, postage prepaid, and addressed to such policyholder to the address last known by such company, in which to pay such premium; and any attempt on the part of such insurance company to cancel or forfeit any such policy without the notice herein provided for shall be null and void. The affidavit of any responsible officer, clerk or agent of the corporation, authorized to mail such notice, that the notice required by this section has been duly addressed and mailed by the corporation issuing such policy shall be prima-facie evidence that such notice has been duly given.''

No notice of intention to cancel the policy was given deceased other than that known by the letters above mentioned.

Proceeding on the assumption that the policy is a Kansas contract, respondent contends that the act of defendant in declaring the policy forfeited for nonpayment of the premium note on its due date was void and of no effect for the reason that defendant did not, prior to the cancellation of the policy, give deceased thirty days' written notice of its intention to cancel as provided in the Kansas statute above quoted.

It is not disputed that the policy at the time it was issued and delivered was a Kansas contract and was subject to the valid and pertinent statutes of that State. The question here presented is whether or not the operation of the statutes of Kansas may be extended into the jurisdiction of Iowa and Illinois and effect the validity of the subsequent loan agreement made between the parties in the latter State and there govern the action of the parties under such subsequent agreement.

Speaking to a similar question in New York Life Insurance Company v. Head, 234 U. S. 149, the court said,

''In other words, concretely speaking we must consider the validity of the loan agreement, that is, how far it was within the power of the State of Missouri to extend its authority into the State of New York and there forbid the parties, one of whom was a citizen of New Mexico and the other a citizen of New York, from making such loan agreement in New York simply because it modified a contract originally made in Missouri. Such question, we think admits of but one answer since it would be impossible to permit the statutes of Missouri to operate beyond the jurisdiction of that State and in the State of New York and there destroy freedom of contract without throwing down the constitutional barriers by which all the States are restricted within the orbits of their lawful authority and upon the preservation of which the Government under the Constitution depends. This is so obviously the necessary result of the Constitution that has rarely been called in question and hence authorities directly dealing with it do not abound. The principle, however, lies at the

foundation of the full faith and credit clause and the many rulings which have given effect to that clause.''

To the same effect, Liebing v. Insurance Company, 276 Mo. 118.

We regard the premium note or loan agreement in the instant case as a modification of the policy to the extent stipulated in such loan agreement and if valid in the State where made is binding on the parties and govern their acts thereunder. The act of defendant in canceling the policy in suit on account of decedent's failure to pay the premium note on its due date is not governed by the laws of Kansas because the premium note was not executed in that State. The stipulation in the premium note to the effect that the policy will lapse if the premium note is not paid on its due date is a valid provision under the laws of this State and it being stipulated in the agreed statement of facts in this case that the premium note does not violate the laws of either Iowa or Illinois, defendant was authorized, under the terms of the premium note, to cancel the policy for failure to pay the note on its due date.

The policy being forfeited for non-payment of the premium note due December 30, 1922, plaintiff is not entitled to recover unless the acts and conduct of the defendant thereafter, amounted a waiver of such forfeiture.

On January 17, 1923, after the forfeiture of the policy for non-payment of the premium note insured mailed defendant her check for $13.75 balance due on the premium note, together with her application for reinstatement. Defendant accepted this check without objection and never offered to return it to deceased during her lifetime. On February 17, 1923, a Mr. Pippert, on behalf of plaintiff, notified defendant of insured's death. After receiving this knowledge, it kept the check until March 17, 1923, at which time it was returned to plaintiff. After receiving the check defendant wrote insured that it would be applied in payment of her past due note and her application for reinstatement would be given consideration on condition that she pay the December premium which was then past due.

It is true that where past due premiums are either accepted or retained on a condition, there is no waiver where the condition is not fulfilled, unless the condition itself is waived, or the premiums so accepted are retained for an unreasonable time after non-compliance with the condition [C. J. 37, page 537, sec. 270.]

In Andrus v. Insurance Assur., 168 Mo. 151, 165, the court disposed of a similar question in the following language:

''When the last premium, due November 22, 1898, fell due and was unpaid, the company, on December 8, 1898, wrote to the assured reminding her that it had not been paid, and urging her to pay. Before this letter reached her, however, the company on December 12, 1898, received the payment. It did not refuse to take it. It did not

mark the policy lapsed or forfeited. It never objected to keeping the money and never offered to return it until more than a month after she was dead. Then it was too late to take such a position. The conditional receipt in use by the company is a share in itself. It acknowledged receipt of the money. It keeps the money. But it says the policy is not reinstated by the acceptance of the money and shall continue to be null and void until the health certificate is filed, and until the president and medical director determine to reinstate the policy. The company must take one horn of the dilemma or the other. It cannot retain the benefits and deny the existence of the contract. If it does not wish the receipt of the premium to have the effect in law of reinstating the policy or of preventing a forfeiture, it must refuse to receive the money until the health certificate is filed and until the president and medical director act.''

The same rule is announced in Francis and Hunter v. A. Q. U. W., 150 Mo. App. 347, 357 and in Reed v. Banker's Union, 121 Mo. App. 419, 427.

''Waiver is defined as the intentional relinquishment or abandonment of a known right.'' [Reed v. Banker's Union, 121 Mo. App. 419, 426.]

The letters from defendant to insured, standing alone, might tend to show that defendant did not intend to relinquish its right to insist on the forfeiture, but the fact that defendant received the past due premium practically one month before insured's death and retained it for the same length of time after learning of her death, indicates a purpose on the part of defendant not to insist on a strict enforcement of the provisions of the contract relative to forfeiture.

The least that can be said of such conduct is that it furnished sufficient evidence from which the trier of the facts was justified in finding that the forfeiture was waived.

The final question to be determined is the effect of insured's failure to pay the premium falling due on December 13, 1922. No note was given for this premium and as the policy in suit is a Kansas contract, this question must be considered in the light of the pertinent statutes of that State relative to forfeiture for non-payment of insurance premiums which are as much a part of the insurance contract as though written therein.

The Kansas statute forbids an insurance company to forfeit or cancel any life insurance policy on account of non-payment of any premium thereon without first giving notice in writing to the holder of any such policy of its intention to forfeit or cancel the same. The statute further provides that before any such cancellation or forfeiture can be made for the non-payment of any such premium, the insurance company shall notify the holder of any such policy that the premium thereon, stating the amount thereof, is due and unpaid, and of its intention to forfeit or cancel the same, and such

policyholder shall have the right, at any time within thirty days after such notice is given, to pay such premium.

The notice required by this statute was not given, therefore forfeiture could not be predicated on insured's failure to pay the premium falling due on December 13, 1922. [Hanna v. Aetna Life Insurance Co., 263 S. W. 526, 527.]

We find no reversible error in the record and therefore affirm the judgment. *Williams, C.,* concurs.

PER CURIAM:—The foregoing opinion by FRANK, C., is hereby adopted as the opinion of the court. *Bland* and *Arnold, JJ.,* concur; *Trimble, P. J.,* absent.