MYRTLE CARPENTER, Respondent, v. ST. JOSEPH LIFE INSURANCE COMPANY, a Corporation, Appellant.

In the Kansas City Court of Appeals, December 4, 1922.

1. **INSURANCE: Contracts: An Agreement that Insurance Contract Shall not Take Effect until Delivery of Policy, Held Valid.** Where parties agree in a applicatio nfor life insurance that the contract shall not take effect until the delivery of the policy during the lifetime and good health of the insured, such agreement will be enforced since it is one the parties have the undoubted right to make.

2. **————: Condition Precedent: Waiver: Provisions of a Policy which are Conditions Precedent to Liability, May be Waived.** While an agreement that policy shall not take effect until delivery during the lifetime and good health of the insured is a condition precedent to liability, it may be waived, and is waived when the insurer so conducts itself as to indicate that it has treated the contract as existing.

3. ———: ———: ———: **Soliciting Agent of Life Insurance Company has not Authority to Waive Conditions Precedent.** A soliciting agent of a life insurance company who had no authority to sign or issue policies, that is, make contracts of insurance, had no authority to waive a provision in an application for insurance that the policy could not take effect until delivery thereof during lifetime and good health of insured.

4. **WAIVER: Definition: Waiver is Intentional Relinquishment of a Known Right.** Waiver is the intentional delinquishment of a known right.

5. **INSURANCE: Evidence Held Insuffcient to Create a Contract of Life Insurance.** The approval of an application for life insurance, registration of policy and delivery thereof to soliciting agent for delivery to applicant, who upon receiving same returned policy to company with report that applicant had died, *held* insufficient to create a contract of insurance, unless the insuring company had in some way signified to applicant that the policy was in force, as the company could have withdrawn it at any moment before it was delivered, particularly where application provided that policy should not take effect until delivery thereof to applicant.

Appeal from the Circuit Court of Buchanan County.— *Hon. L. A. Vories,* Judge.

REVERSED.

*W. K. Amick* for respondent.

*R. A. Brown* and *R. L. Douglas* for appellant.

TRIMBLE, P. J.—Plaintiff, as the widow of Charles M. Carpenter, deceased, brought this action on an alleged contract of insurance by defendant on the life of her husband in which she was the beneficiary. The petition alleged vexatious refusal to pay and prayed for a reasonable attorney's fee and ten per cent damages for such refusal.

The defense was, and is, that no contract of insurance ever came into existence because the policy was

never delivered, nor was the contract completed in any other way. The reply pleaded that the provision relied upon, requiring delivery of the policy, was waived by the company, and that, by reason of its retention of the premium and its failure to return the same within a reasonable time, the company is estopped to deny that the policy was in force.

The trial resulted in a verdict and judgment for plaintiff in the sum of $1099.50, the amount of the policy and interest, with $50 damages and $200 attorney's fees for vexatious refusal to pay. Defendant appealed.

The application for the policy was signed by Carpenter on May 17, 1920, and contained the provision that—

"Should my application be approved, and a policy of insurance be issued, such policy and application shall be and constitutes the contract between the parties hereto."

It also contained the provision that—

". . . this contract is to be null and void and of no binding force whatever, unless my application is received and accepted at the home office of the company and approved by the Medical Director and the policy of Insurance is delivered to me or my beneficiary during my lifetime and while in good health."

It also contained the further provision that—

". . . any money, note or other thing of value given to this Company or its agent taking this application on account of the first premium charge on the policy applied for, in whole or in part, shall be held by this Company as a deposit merely and not as payment, until such time as the application shall be accepted or rejected; if same be accepted, such money, note or other thing of value shall be applied on such first premium charge; if rejected, same shall be returned to me, my heirs, administrators or assigns."

After signing the application, Charles M. Carpenter executed his note, due in ninety days, for the first

Carpenter v. St. Joseph Life Ins. Co.

premium and delivered it, with the application, to the soliciting agent.

The application and note accompanying it were received at the Home Office of the Company, the Medical Director approved the application, the policy was written up and signed by the Company and then sent by it to the Insurance Department at Jefferson City for registration. It was duly registered there on May 25, 1920, and returned to the Home Office of the Company on May 27, 1920, and in the afternoon of that day the Company turned the policy over to the soliciting agent to be delivered.

The next morning, Friday, May 28, 1920, the soliciting agent, with the policy in his possession and while on his rounds delivering policies, passed within two blocks of Carpenter's home, but as Carpenter was then away at his work, and as Mrs. Carpenter had objected to her husband taking out the policy, the agent decided that he would wait until night when Carpenter would be at home and delivery of the policy to him in person could be made.

At this time Carpenter was alive and in good health. However at 7 o'clock that evening (Friday, May 28, 1920), and before the agent had completed his rounds or had gotten back to deliver the policy, Carpenter was accidentally killed. The soliciting agent says that he was late in getting back home from the rounds that day and upon doing so learned that Carpenter was dead and did not deliver the policy but the next day, May 29th, returned it to the Company with the report that Carpenter was dead. There is no question but that the policy was never delivered.

Over the objections of defendant, plaintiff introduced evidence to the effect that on Monday, May 31st, the soliciting agent, to whom the policy, on Thursday, May 27th, had been given for delivery, came to plaintiff and told her that the policy came back from Jefferson City on Thursday and was given to him on that day

to deliver to her husband; that on Saturday he saw a notice of her husband's death in the paper, but there was no need of his bringing the policy down as it was absolutely in full force at the time he was killed.

Plaintiff further introduced, over the objections of defendant, evidence to the effect that on Saturday, May 29th, the soliciting agent, in attempting to get certain of plaintiff's relations to take out insurance, told them that he then had the Carpenter policy with him and that his widow (the plaintiff herein) would get her insurance.

On Wednesday, June 2, 1920, defendant, according to its evidence, turned the premium note over to the soliciting agent and directed him to return it, at the same time taking the agent's receipt therefor, dated June 2, 1920, saying the note was received "for return to his widow." This receipt was introduced in evidence. The evidence in behalf of defendant is further that the soliciting agent either on the same day or the next, June 3rd, took the note to plaintiff and tried to return it on the ground that the policy was never in force not having been delivered; but that plaintiff refused to accept it, and the agent then took the note back to the company and reported her refusal to receive it. On June 10, 1920, the company, after consultation with its counsel, sent a letter, signed by the soliciting agent, to plaintiff by registered mail, in which the note was inclosed and it was stated that the note was returned because the policy, not having been delivered during the lifetime and good health of plaintiff's husband, was never in force.

Owing to the fact that plaintiff had gone to the residence of one of her relatives, this registered letter was not delivered to her until June 18th, a period of twenty or twenty-one days after the Company had learned of her husband's death and that the policy had not been delivered. Plaintiff refused, however, to receive the note and sent it back to the Company.

On June 22, 1920, the Company having marked the note cancelled, wrote plaintiff to that effect and stated

that it was ready to deliver the cancelled note to her at any time. The note was introduced in evidence and across its fact in red ink it bore the words "Cancelled on account of non-delivery of policy."

Afterward, when the due date of the note arrived in August, 1920, plaintiff went with her counsel to the Company and offered to pay it but the Company refused to accept payment on the ground that the policy never went into effect and that nothing was owed defendant.

The soliciting agent denies that he ever told plaintiff or her relatives that the policy was in force and would be paid, but says that, on the contrary, the note was offered to her on June 2nd as heretofore stated. The plaintiff, however, denies that any offer to return the note was made to her until on the 18th of June she received it in the registered letter and returned the note as heretofore stated.

The defendant demurred to the evidence both at the close of the plaintiff's evidence and at the close of all the evidence in the case. These the trial court over-ruled.

In behalf of plaintiff, the court instructed the jury that if they believed from the evidence that defendant, after knowledge of Carpenter's death, did not "promptly return or offer to return" the premium note, but retained said note "for an unreasonable length of time" after the death of said Carpenter, then the verdict should be for plaintiff for the full amount of the policy.

The court refused an instruction, asked by defendant, to the effect that if the premium note was delivered by defendant to the soliciting agent on June 2nd with instructions to deliver it to plaintiff, then verdict should be for defendant.

It is well settled that where the parties agree in the application that the contract shall not take effect until the delivery of the policy during the lifetime and good health of the insured, such agreement will be enforced,

since it is one the parties have the undoubted right to make. [Cravens v. New York Life Ins. Co., 148 Mo. 583, 599, 601; Yount v. Prudential Life Ins. Co., 179 S. W. 749; Kirk v. Woodmen of the World, 169 Mo. App. 449, 456.]

But, while such provisions are conditions precedent to liability, they may be waived; and are waived when the insurer so conducts itself as to indicate that it has treated the contract as existing. [Rhodus v. Kansas City Life Ins. Co., 156 Mo. App. 281; Pierce v. New York Life Ins. Co., 174 Mo. App. 383, 390.]

The question then is, was any evidence of such waiver shown?

Now, so far as the alleged statements by the soliciting agent to the plaintiff and her relatives are concerned, they cannot be relied upon to constitute waiver, since such agent had no authority to waive. This is so, even if, as plaintiff claims, the provision in the policy to that effect is not binding because the policy was not delivered. Such lack of authority appears because the evidence shows he had no such authority. He could only solicit insurance, collect the first year's premium, or take a note for it, and deliver a policy when the Company gave him one for delivery. He had no authority to sign or issue policies—i. e. make contracts of insurance—and hence could not, by waiver, make contracts that did not otherwise exist. Besides, the alleged acts of the agent occurred after Carpenter's death and at a time when the rights of the parties with regard to the question of whether there was a contract of insurance had become fixed. Hence no waiver by way of estoppel could be predicated thereon, and, because of the agent's lack of authority no waiver by way of an intentional relinquishment of the right to insist upon the condition as to delivery, could arise from such acts on his part. The agent, therefore, being without authority could not create waiver in this case. [Rhodus v. Kansas City Life Ins. Co., 156 Mo. App. 281, 285; Bell v. Missouri State Life Ins. Co., 166 Mo. App. 390, 400.]

It follows, therefore, that it is only from the acts of the Company itself that waiver, if at all, can be shown, This is not a case where a contract of insurance *was in existence* and *afterward* something arose which created a controversy as to whether that contract *ceased* to be valid. In this case the contract was never completed by delivery of the policy; and *no* contract of insurance *ever came into existence* at all, *unless* the Company *waived* the non-delivery. In other words, the plaintiff has no contract of insurance unless the Company has, with knowledge of the facts, so conducted itself as to be reasonably open to the charge that it *treated the contract as existing.* And plaintiff must sustain the burden of proving this.

There being no contract whatever unless the defendant created one by waiver, it necessarily follows that the waiver plaintiff must show in this case, is one of strict, *pure* waiver, which is the "intentional relinquishment of a known right." [27 R. C. L. 904]. A waiver by estoppel will not do, for in this case, as has been stated, there is no waiver by estoppel. The terms "waiver" and "estoppel" are, in the law of insurance, often used interchangeably, but almost invariably when this is done the elements of an estoppel appear. [27 R. C. L., sec. 2, p. 904]. Slight circumstances indicating an election to waiver a *forfeiture* may be sufficient to create a waiver in the nature of an estoppel, though the acts may be such as are insufficient to create a strict technical estoppel, since forfeitures are not favored. [14 R. C. L., sec. 357, p. 1181.] But this case is not one of forfeiture, and, as stated, there are no elements of estoppel. The waiver herein must be such as will *create a contract* since none exists without it. It must, therefore, be such a waiver as contains all the elements of a valid contract. [14 R. C. L. 1155.]

We have been unable to find where plaintiff has proved such a waiver. The uncontroverted evidence is that when the soliciting agent returned the policy to the

Company with the report that Carpenter had died with the policy undelivered, the Company took the policy back and on June 2nd turned the note over to the agent with directions to return it. It may be said that as this was defendant's evidence the plaintiff is not bound by it, but the trouble with this it that the plaintiff's cause of action rests on the contention that the waiver created a contract, and she has the burden of proof as to that; wherefore, it is incumbent on her to meet and controvert such evidence before it can be denied whatever effect it may have. Whether the soliciting agent obeyed those instructions or not makes no difference, since the question is what the Company itself did, the soliciting agent having no power to waive. When the note was not delivered, either through plaintiff's refusal to accept it, as the agent claims, or because the agent did not offer to return it, as plaintiff claims, the Company on June 10th had the agent write a letter to plaintiff inclosing the note returning it on the ground that the policy was not delivered. When the plaintiff refused to receive it and returned the note, the Company cancelled it and wrote plaintiff to that effect, and later when plaintiff offered to pay the note when, by its terms, it came due, the Company refused to accept the money.

So that where is there any evidence that the Company ever at any time treated the contract as in existence after it learned of the death of Carpenter with the policy undelivered? There is no such evidence unless it be in the fact that the Company neglected to take any steps to return the note until June 2nd, five days after Carpenter's death. But this short delay, under the distressing circumstances with which the widow was surrounded, was no evidence that the Company was holding the note as an enforcible obligation or that the contract was in existence.

It will not do to say that because the policy was written up and turned over to the agent for delivery, but was not delivered on Friday morning May 28th, this

should play any part in the matter or make any difference. The policy was not *withheld* from delivery. It was only by fortuitous circumstances that Carpenter was killed before it was delivered. And when it was not so delivered, all that had been done in the way of writing it up, registering it and turning it over to the agent for delivery, amounted to nothing. Unless the Company had in some way signified to Carpenter that the policy was in force, the Company could have withdrawn it at any moment before it was delivered. [Horton v. New York Life Ins. Co., 151 Mo. 604, 620.]

The Company in no way gave Carpenter notice that the proposal for a contract contained in his application had been accepted, and hence no contract ever arose. The mere failure to return the not yet due note during the five distressing days immediately following the death does not indicate an intention to treat the contract as existing, nor did it cause plaintiff to change her situation in any way or cause her a particle of loss.

Most of the cases cited by plaintiff are where there was an existing contract and the question was whether the defendant had waived a forfeiture by acting in a way inconsistent with the idea that the contract was at an end.

The case of Rhodus v. Kansas City Life Insurance Co., supra, was one where there was no delivery of the policy, but there the Company, knowing that the application had not been acted upon and that no policy had been issued, nevertheless *accepted the cash* due it on the note which the agent had collected and thereafter *retained* it. Of course such action necessarily meant that a contract of insurance was in force regardless of the fact there was no policy or delivery thereof. In the case of Pierce v. New York Life Ins. Co., 174 Mo. App. 383, the insured paid the premium in cash, the part due the Company was sent to it, and at the time of such payment the agent had the policies in his possession and the only thing that prevented their delivery was insured's

decision to change the beneficiaries. The agent kept the policies for two weeks and was intending to send them back for cancellation and reissue and had he done so no contract would have arisen, as insured died before delivery. But the *manager* of the Company, i. e. the Company itself, elected to treat the policies, already issued but not delivered, as *existing contracts* by having insured to sign an application for the change of beneficiaries and the change was indorsed by the Company on the policies. This treating of the undelivered policies as existing contracts waived the non-delivery.

In Bell v. Missouri State Life Ins. Co., 166 Mo. App. 390, the insured paid the full premium in cash and the same was remitted to the Company with the application. The policy was issued and the agent delivered it by placing it where insured directed him to put it, but the delivery was after the insured was not in good health, he having been accidentally injured. There was, therefore, an acceptance of the policy by the insured, and this element necessary to the creation of a contract was complete. But the condition that he should be in good health was not complied with and the agent had no authority to waive that condition. The Company, however, after knowledge received from the proofs of death that the insured was not in good health, nevertheless *retained* the cash premium and made no offer to return it for several months afterward. This, of course, was conduct inconsistent with the idea that the policy was void because of the condition as to health when delivered.

We can see no difference in principle between the case at bar and the case of Tainter v. Central Life Ins. Co., 185 S. W. 1185. There was no delivery of the policy in that case. The Company directed the soliciting agent to return the premium note but this was not done. When a policy was demanded of the Secretary of the Company and refused, plaintiff demanded the return of the note which was also refused, the secretary saying the agent had it and saying also that the Company would

decide what it intended to do and notify plaintiff. No notice was given and no offer to cancel or return the note was made until after the Company was sued and its answer filed, the Company in the meantime having obtained the note from the agent and tendered it in court. It was held there was no liability. The elements of a waiver necessary to create a contract are more lacking in the case at bar than in that case, For if a mere failure to return the note not yet due sooner than the five days constitutes such a waiver in this case, then the refusal to return the note in the Tainter case, and the holding of it until suit was brought, ought to more certainly constitute a waiver in that. It is true, no policy was written up in the Tainter case, while one was written up in this. But, as heretofore observed, the writing of the policy in this case amounted to nothing since no contract could exist thereby until it was delivered. Until then the policy was only so much paper.

There being, in our view, no evidence of a waiver on the part of the defendant whereby a contract was recognized or treated as existing, and the burden being on plaintiff to prove such fact in support of her cause of action, the judgment is reversed. All concur.