STATE OF MISSOURI at the relation of the MUTUAL LIFE INSURANCE COMPANY OF BALTIMORE, Relator, v. HOPKINS B. SHAIN, ROBERT M. REYNOLDS and EWING C. BLAND, Judges of the Kansas City Court of Appeals.—98 S. W. (2d) 690.

Division One, November 12, 1936.

**622**

*C. F. Douglass* and *McAllister, Humphrey, Pew & Broaddus* for relator.

*Edwards, Thomsen & Johnson* for respondents.

HYDE, C.—This is a certiorari proceeding to quash the opinion of the Kansas City Court of Appeals in the case of Raymond W. King et al. v. Mutual Life Insurance Company of Baltimore, 89 S. W. (2d) 145, because it conflicts with prior controlling decisions of this court. The facts are stated in the opinion of the Kansas City Court of Appeals, as follows:

"The evidence tends to show that plaintiffs husband and wife, at a time not disclosed, obtained from the defendant a policy upon the life of their infant daughter, Helen, in the amount of $220; that later, on April 20, 1933, the defendant's agent, Sedoris, and another agent of defendant whose name the plaintiffs did not know, called on plaintiffs at their home and solicited plaintiffs to take another policy upon

the life of their said daughter; an application for such other policy was written and signed by plaintiff, Raymond W. King, which, in addition to the usual questions and answers, contained the following: '. . . that no contract for insurance is created by reason of this application, until date of actual delivery of the policy to the insured in person, while in sound health. . . .' Concerning the taking of the application, Mr. King testified:

" 'State what conversation you and Mrs. King had with these agents at the time? A. Well, we decided upon a four hundred dollar straight life policy to be paid weekly, ten cents a week, and they wrote this application and they said that in due time they would deliver a policy, so they asked me to pay the two weeks' premium. I says, "Well, I don't usually pay for anything until I get it." They said, "Well, if you will pay that two weeks' premium right now we will put this policy into effect tonight," which I did.'

"Upon receiving the premium, the agent executed to Mr. King a receipt therefor as follows:

" 'Received from Mr. King 20 cents, which is a payment on account of application this day made for insurance in the above named Company. No obligation is incurred by the said Company by reason of this payment, unless said application is accepted and a policy delivered to the insured in person, while in sound health, when said payment shall apply to the first premium due after said delivery of the policy. O. C. Sedoris, Agent.'

"Mr. King's testimony concerning the receipt was as follows:

" 'Now, when they handed you that plaintiffs' Exhibit 1 (receipt) did you read it? A. Yes, sir. Q. Now, state whether or not you said anything to them about it? A. I said that that receipt says it isn't binding on the company until the policy is delivered. Q. All right, what did they say in return? A. They said they were not bound by that receipt, that if I would pay the twenty cents they would put the policy in force from that day.'

"Plaintiffs' daughter, Helen, died May 1, 1933. In a few days thereafter the defendant, through its agent, paid to plaintiffs the $220 policy. At the time payment was made plaintiffs inquired of the agent who made the payment concerning the $400 policy. The agent stated that the company would do nothing about it, and advised plaintiffs 'not to go to any expense trying to collect, it would be no use.'

"On May 22, 1933, the plaintiffs, through their attorneys, formally notified defendant's home office of their claim concerning the insurance in the sum of $400 and demanded payment of that amount. The defendant in reply quoted the terms of the application and of the receipt, denied liability, except for the return of the premium, but did not offer to return the premium.

"Both of the plaintiffs testified that the defendant had never at any time offered to return the premium which was paid April 20, 1933.

"The evidence of defendant's agent was to the effect that they did not make contract of insurance on April 20; that after the death of plaintiffs' daughter, Helen, tender of the return of premium was made to both Mr. King and Mrs. King and that the tenders were refused.

"In the defendant's answer, which was filed on the day of trial, November 16, 1933, the defendant tendered into court the premium, amounting to twenty cents. The record does not show that the amount of the tender was deposited with the clerk of the court."

The Court of Appeals specifically held that "defendant's agent, Sedoris, did not have authority to make a contract of insurance." Nevertheless the court ruled that plaintiffs could recover thereon, saying:

"The facts favorable to plaintiffs show that in May the defendant knew that plaintiffs claimed its agent had made the alleged contract of insurance and that plaintiffs paid the premium which defendant's agent demanded. The defendant did not offer to return the premium until November 16, the day of trial. These facts authorized the jury to find that the defendant ratified the unauthorized act of its agent and was bound thereby."

■ It is thus clear that the basis of this decision is that, although defendant's agent had no authority to make the agreement about putting the insurance in force immediately, the company was bound by his unauthorized agreement to do so, because it thereafter ratified it. Does this conflict with the decisions of this court? This question must be decided upon consideration of what this court has held to be the essential elements of ratification. In Scrivner v. American Car & Foundry Co., 330 Mo. 408, 50 S. W. (2d) 1001, this court, citing many cases, stated elemental principles of ratification, as follows:

"Knowledge by the principal of the unauthorized act done or agreement made by the agent is essential to ratification of such act or agreement. . . . There can be no ratification by a principal of an unauthorized contract of an agent, unless the principal has knowledge of the terms and material facts of the contract. This is settled law in Missouri and in all other jurisdictions."

Acquiescence, by keeping the fruits of a transaction for an unreasonable length of time with such knowledge, might be an implied ratification but certainly no contract can be ratified without knowledge of what it is. In insurance cases, the question of ratification presented is often whether an unauthorized waiver by its agent of certain conditions, which the company has required shall be fulfilled before a contract can be created, has been ratified by the company,

so that a contract of insurance has become the valid and binding contract of the company without compliance with the conditions stipulated by it. This is usually referred to as waiver by the company, although it would be more properly called a ratification by the company of an unauthorized waiver by its agent. "Ratification" contemplates "the adoption of a previously formed contract," so that, although unauthorized, it becomes valid. [See 52 C. J. 1145, sec. 1.] "While 'ratification' and 'waiver' may be and are sometimes used interchangeably, nevertheless, strictly speaking, 'ratification' is distinguished from 'waiver,' the latter being defined as the renunciation of some rule which invalidates the contract, but which, having been introduced for the benefit of the contracting party, may be dispensed with at his pleasure." [52 C. J. 1146, sec. 3.] Either "ratification" or "waiver" may be implied from other facts, but in any event knowledge of the facts is just as essential to "waiver" as it is to "ratification." This court has held that "a waiver is an intentional relinquishment of a known right;" and that "even in insurance cases the *intention to waive* must plainly appear, or else the acts or conduct relied upon as constituting waiver must involve *some* element of estoppel." [Schwab v. Brotherhood of American Yeomen, 305 Mo. 148, 264 S. W. 690; see, also, State ex rel. Talbott v. Shain, 334 Mo. 617, 66 S. W. (2d) 826; Biggs v. Modern Woodmen, 336 Mo. 879, 83 S. W. (2d) 898.] Of course, there could not be an *intention* to either waive or to ratify without knowledge of what was to be waived or ratified.

In this case, plaintiff's claim was that defendant's agent made a contract of insurance, immediately effective, because he orally agreed to waive and set aside the written provisions of the application and receipt stating that no contract of insurance was or would be created until the application was accepted and a policy delivered while the insured was in sound health. What was there to show either directly or by inference that the company knew that their agent had made such an oral agreement or waiver or that plaintiffs so claimed? Certainly to hold that the company, without this knowledge, waived these provisions, which the Court of Appeals held its agent was not authorized to waive, or that it ratified his unauthorized waiver, would conflict with all these decisions of this court defining the principles of "ratification" and "waiver." If there is any difference, it should take a stronger showing of knowledge of the facts to establish an adoption and ratification of an agent's complete and wholly unauthorized oral contract of insurance, than it would to show a waiver of or the ratification of an agent's oral waiver of the fulfillment of only one condition which was required to make an otherwise agreed upon insurance contract go into effect; as for example, where a policy has been issued but not delivered; or where a lapsed policy is reinstated.

It will be noted that the Court of Appeals did not find that the company was ever, prior to the trial, given any information or had any knowledge of the statements plaintiffs claimed that its agent Sedoris made to them. The Court of Appeals only found that the company had the knowledge, ''of their claim concerning insurance in the sum of $400.00,'' it obtained from the formal notification and demand made by plaintiffs'' attorneys on May 22, 1933. Therefore, the ruling of the Court of Appeals that the jury was warranted in finding that the company ratified the unauthorized contract, which plaintiffs' testimony showed that its agent attempted to make, was founded solely upon the knowledge it obtained of plaintiffs' claim, from the letter written by plaintiffs' attorneys on May 22, 1933, and its failure in view of the knowledge it got from this letter to tender the premium collected by the agent prior to the day of the trial, November 16, 1933. Since the Court of Appeals thus made this letter the basis of its ruling, we may consider it, as a written document upon which the court's ruling depends, as if fully set forth in the court's opinion. [State ex rel. Talbott v. Shain, 334 Mo. 617, 66 S. W. (2d) 826, and cases of court en banc therein cited which have definitely determined what facts are to be considered on certiorari.] The letter of plaintiffs' attorneys reads as follows:

''Our client, Raymond W. King, has turned over to us for collection claim against you which arose due to the death of his daughter, Helen G. King. On April 20, 1933, an agent of your company made a contract of insurance with our client whereby your company insured the life of Helen G. King, who was a girl nine years old, in the sum of $400.00 On May 1, 1933, Helen G. King died of pneumonia and your company was notified of the death but has as yet failed to pay to our client the $400.00 due by reason of said insurance contract. We herewith make formal demand of you to send us your check in payment of this loss and wish to notify you that in the event we do not receive payment, we shall immediately institute litigation against you, in which we shall ask for attorneys'' fees, interest and vexatious delay damages.''

This letter clearly did not state any claim that there was an oral contract of insurance nor state any facts which could have informed the company that there was any basis for a claim of an oral contract. Moreover, when this letter was written, the loss sought to be insured against had already occurred. Helen King was then dead and this fact was known by the company because it had prior to that time paid the $220 policy on her life and had through its agent denied liability upon this transaction for $400 more insurance. Instead of ratifying any contract therefor, it had already repudiated this transaction as a basis of liability. Up to May 22, 1933, it is not claimed that the company had done anything that could have constituted a ratifica-

tion of an oral contract of insurance. At no time thereafter prior to the trial was there any knowledge shown on the part of the company of the facts which it was claimed formed the basis for such an oral contract, and such knowledge would certainly be essential either to a waiver of its stated requirements for a policy or to a ratification of the agent's oral agreement to create an insurance contract without compliance therewith.

Since it is apparent that the validity of this contract for life insurance depends *solely* upon proof of acts or omissions of the insurer, occurring after the death of the insured, and even then, without knowledge of all essential facts which constituted the agreement or waiver it was claimed to thereby ratify, and also after liability thereon had been denied, we think this decision clearly conflicts with this court's decision in State ex rel. Metropolitan Life Ins. Co. v. Shain, 334 Mo. 385, 66 S. W. (2d) 871, and also in State ex rel. Kansas City Life Ins. Co. v. Allen, 337 Mo. 770, 85 S. W. (2d) 886, which further interprets it. Respondent's brief says that this case is different from the Metropolitan Life case because there the facts about the insured's health were fraudulently concealed at the time the premium was paid. If knowledge of the facts is essential to a ratification, which would make this company liable to plaintiffs, what difference could it make whether the company was prevented from learning these facts by fraudulent concealment or by mere failure to inform it of them? [See 14 R. C. L. 1194, sec. 371, cited by this court in that case.] The basic holding of that case was that a plaintiff does not, by merely showing lack of tender, make a case proving a valid contract, either by ratification or waiver; but must further prove that there was acquiescence therein with knowledge of facts, necessary to be known to make such acquiescence a valid and binding ratification or waiver.

In the State ex rel. Metropolitan Life case, it is pointed out that "this court has ruled that a reinstatement of a lapsed policy is in effect a new contract of insurance. [Jenkins v. Covenant Mutual Life Insurance Co., 171 Mo. 375, 71 S. W. 688; Aetna Life Insurance Co. v. Daniel, 328 Mo. 876, 42 S. W. (2d) 584.]" Therefore, the same rules are to be applied to this case in considering whether a contract of insurance was ever created as were discussed in that case in determining whether a lapsed policy was reinstated. In both cases the required premium was paid to the agent. In the Metropolitan case this did not create a valid insurance contract without "the presentation of evidence satisfactory to the insurer of the sound health of the insured." In this case what was required to create a valid insurance contract was an acceptance of the application and a delivery of the policy while the insured was in sound health. In the State ex rel. Kansas City Life case, a policy was issued before

death and only delivery thereof to the insured while in sound health was required. In the Metropolitan case, this court quashed the opinion of the Kansas City Court of Appeals, which held that there was a jury case on the issue of reinstatement where the insured's wife paid the premium only a few hours prior to his death, because this premium was not shown to have tendered back within a reasonable time thereafter. The court held that this opinion was in conflict with Schwab v. Brotherhood of American Yeomen, supra.

The quashed opinion said:

"If defendant kept these premiums for an unreasonable length of time, after having received them, or with the knowledge that their solicitor, Shnayerson, had received them, without repudiating the transaction by returning the money, then defendant ratified the act of Shnayerson in receiving the money for it, waived the provision of the policy providing for presentation of evidence satisfactory to the company of the sound health of insured and is estopped to claim that such evidence should have been furnished it."

This court said that, because there was no knowledge of the insured's condition at the time the premium was accepted and "no act or nonact of the insurer to impute to it a waiver of the second condition for the revival of the policy" before his death, "it should follow that waiver of a condition of reinstatement cannot be proved *solely* by acts of the insurer done after the death." This court further said: "The intention of the insurer to waive the second condition to revival of the policy does not plainly appear, nor do the acts or conduct of the insurer relied upon to constitute waiver involve any element of estoppel. . . . If the insured were alive when the fact of payment of the delinquent premiums came to the knowledge of an agent within the scope of whose agency it was to require evidence of good health. or to waive such evidence, and if the insured lived sufficiently long after that knowledge came to such an agent to afford the insurer a reasonable time in which either to demand the evidence or to waive it, there would be presented a state of facts which is not in this case. . . . But . . . the insured was dead when this knowledge reached the manager of relator's Terrace Park district."

In the State ex rel. Kansas City Life case, no policy was delivered to the insured before his death, but there "his application was accepted by the company and the policy issued and sent to the agent for delivery more than two weeks prior to the time appellant became ill. The nondelivery of the policy was not the fault of the insured. The company did not cancel the policy when it learned of the applicant's illness." Nevertheless, this court said, "if there was no contract of insurance at the death of Wood, none could have been brought into existence by the acts of the company as proven in this case. The

opinion in the Shain case so holds. [State ex rel. Metropolitan Life Ins. Co. v. Shain, supra.] If, on the other hand, the company had waived the provisions of the policy quoted, prior to the death of Wood, and the policy was in force, then it was immaterial that the policy was not delivered prior to the death of Wood, nor was the failure to return the money to plaintiff material." This court did not quash the opinion of the Springfield Court of Appeals, holding that this was a jury case "on the theory that the defendant considered the policy in force and effect and that it considered the contract as completed," because, as it said: "We find that the opinion of the Court of Appeals, holding there were sufficient facts in evidence to authorize a jury in finding there had been a waiver, was not based on acts done by the company after the death of Wood," and "we interpret the opinion of the Court of Appeals to hold that the acts and conduct of relator, after the death of Wood, tended to show that the company considered the policy in force prior to the death of Wood. . . . The judgment was not affirmed on the basis of what was done after the death of Wood. This is where the case differs from the case of State ex rel. v. Shain, supra. . . . The conduct of the company certainly was sufficient to submit the question of waiver of delivery to the jury."

In that case, not only did the company fail to cancel the policy when it learned of the insured's illness, but after knowing of such illness, sought to collect notes given for premiums. Collection of premium notes even after the death of the insured might properly be considered evidence of a recognition of the existence of a valid insurance contract prior to his death; especially when the proceeds are retained and not tendered back at all as seems to have been the case in Rhodus v. Kansas City Life Ins. Co., 156 Mo. App. 281, 137 S. W. 907, cited by respondents. Of course, a company could not refuse to give back the premium at all and then escape liability, because no one will be allowed to repudiate a contract, if he insists on keeping the benefits he received under it, but that was not the situation here. The company, in its first letter, admitted its liability for return of the premium, and was, therefore, willing to return it if plaintiffs would accept it. Tender was made when the company was required to answer. Certainly no *intention* to ratify appears from these facts.

What was there to show that the company recognized an insurance contract of any kind as being in force, in this case, before the death of Helen King? It was not in force when she died because the agent had no authority to put it in force (as the Court of Appeals recognized) and the company had not (as it also recognized), up to May 22, 1933, done anything to ratify it or recognize it. Plaintiffs had been informed that there was no such contract in force prior to the time the letter of May 22, 1933, was written. The company's reply

630

to that letter did not recognize a contract, but on the contrary, denied liability for any insurance. There is nothing in the opinion to show how soon after May 22, 1933, suit was filed, but it was tried at the September, 1933, term, of the Jackson County Circuit Court. As said in the Schwab case (264 S. W. 1. c. 692) certainly plaintiff "was not misled with respect to bringing suit," and "was not misled with regard to the prosecution of the suit after it was begun," because it was filed for and tried in the next term of court convened after the letter of May 22, 1933, was written. [See Sec. 2019, R. S. 1929.] Our conclusion is that the opinion herein is in conflict with the cases above discussed, because ratification in this case is based *solely* upon mere failure to act after the death of the person to be insured and, therefore, after the loss sought to be insured had occurred; and also because it was not even shown that, prior to the tender it did make, the company had full knowledge of the facts, which it was claimed created the invalid contract (or of the agent's unauthorized waiver of requirements essential to a valid contract) alleged to have been ratified. Because of the view we take, it is unnecessary to discuss the question of the liability of the company for penalties for vexatious delay.

It is ordered that the record and opinion of the Kansas City Court of Appeals, in the case of Raymond W. King and Helen R. King v. Mutual Life Insurance Company of Baltimore, be quashed. *Ferguson* and *Bradley, CC.*, concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.