I. C. CARL, Appellant,

v.

NATIONAL FIDELITY LIFE INSURANCE COMPANY, a corporation, Respondent.

No. 21975.

Kansas City Court of Appeals.

Missouri.

April 4, 1955.

Furry & Taylor, Kansas City, Mo., for appellant.

Morrison, Hecker, Buck, Cozad & Rogers, Kansas City, Mo., for respondent.

BROADDUS, Judge.

This is a suit upon an alleged insurance agreement. Defendant's motion to dismiss plaintiff's second amended petition was sustained by the trial court. Plaintiff elected to stand upon said petition and refused to plead further. Whereupon the court dismissed said petition with prejudice and entered final judgment for defendant. Plaintiff has appealed.

Plaintiff's second amended petition, omitting caption and signatures, is as follows:

"In an effort to comply with the ruling of the court of December 8, the plaintiff amends his petition as follows:

"1. Plaintiff states that the defendant is a corporation and a citizen and resident of Missouri, with its principal office and place of business in Kansas City, and engaged in a general insurance business and issues life insurance policies and is engaged in the life insurance business in Missouri and other states.

"2. Plaintiff further states that he is the father of the late Charles E. Carl, who lost his life on November 7, 1947, when a train struck the motor vehicle in which he was riding on a highway over a crossing at a place about five miles west of Lawrence, Kansas; that plaintiff is the only beneficiary of the deceased under said insurance claim and agreement.

"3. He further states that on October 16; 1947, Charles E. Carl, now deceased, signed an application of defendant for a life insurance policy in the sum of $5,000.00; that said application was received at defendant's home office October 17, 1947; that on said day said defendant instructed its local office to make an inspection report concerning deceased; that on November 4, 1947, said agent, George Cook, collected the amount of $18.55 from Mrs. George W. Alexander, Jr., wife of the deceased's employer; that Mrs. Alexander gave to said Mr. Cook a check on the First National Bank of Lawrence, Kansas, for said amount, and that said George E. Cook as agent of said defendant endorsed and cashed said check November 10, 1947; that said George E. Cook, as such agent, issued and delivered to Mrs. Alexander a receipt reading as follows:

" '$18.55

" 'Received of Charles Carl for insurance in the Eighteen & 55/100—— Dollars

" 'If application is not accepted this money will be returned.

" 'Dated at Lawrence, Ks. This 4th day of Nov. '47.

" 'Payment of Life Policy George E. Cook, Agent'

"4. Plaintiff states that under the arrangements between defendant and its said agent, Cook, whereby said Cook obtained applications and delivered them to the defendant and the defendant issued policies and sent such policies to said Cook for delivery to the insured and charged the account or amount against the said agent and held said agent responsible for the amount of the premium to be remitted by said agent to said defendant; that when said Cook did not collect the premium with the application, said Cook reported to the company with the application that the policy was to be issued C.O.D. and that under said arrangements said Cook would collect all or part of the premium he was able or decided to collect at the time of delivering the policies and if Cook collected part of the premium before delivery of the policy he either reported the amount so collected or waited until delivery of the policy.

"5. Plaintiff further states that under said arrangement and his authority, the said Cook did collect the sum of $18.55 on November 4, 1947, and that said sum was one-half of the semi-annual premium; that when said Cook collected $18.55, he informed Mrs. Alexander that said sum was a sufficient amount to be paid and that he would collect the remaining part from the insured; that defendant's agent, under oath, in his deposition swore that under his authority, he collected the sum of $18.55 as one-half of a semi-

annual premium of $37.10; that he would collect the other half from the insured; that he collected the said sum of $18.55 because 'if you collect it you have a better chance of having your policy sold, and then it doesn't give him a chance to buy something else and be paying for it and holding up the policy for delivery'; that defendant accepted and has retained the said sum of $18.55 that its said agent, George Cook, so collected; that said defendant has at all times retained said $18.55 and did not return said amount to the said Mrs. George W. Alexander, or to the beneficiary named in the policy, I. C. Carl, or to any court, or to this court in the original action filed herein being No. 531,781 and that by reason of all the facts herein stated said premium belongs to said defendant.

"6. Plaintiff further states that all he knows about whether defendant has or has not accepted said application or issued said policy is the alleged claim of the defendant that it has not done so; that if anyone has made demand for the return of such premium, plaintiff has no knowledge thereof.

"7. Plaintiff further states that by reason of the foregoing facts said defendant is required in equity to issue said policy if it has not done so and to pay thereon, or is estopped to deny liability on said agreement and is indebted to the plaintiff for the amount of said policy, $5,000.00 and interest at six per cent from October, 1947.

"Wherefore, plaintiff prays for either a judgment against defendant for the sum of $5,000.00 with interest at six per cent, from October, 1947, or for a finding by the court that the defendant be required to issue said policy and to pay thereon or that defendant is estopped to deny liability on said agreement and on said contract, and is liable thereon for said amount and for interest and costs herein and all proper relief."

It is to be noted that the amended petition contains no allegation that the application of Charles E. Carl was ever accepted by defendant, or that the entire first premium was ever paid. It is also to be seen that said petition does not allege that any credit agreement with respect to the remaining one-half of the first premium was entered into by the proposed insured and the defendant's soliciting agent, or that defendant's agent had any knowledge of the death of Charles E. Carl at the time of the cashing of the check of Carl's employer's wife, or that defendant had any knowledge of the proposed insured's death at the time it allegedly accepted the deposit of one-half of the first premium; or that either Charles E. Carl or plaintiff was in any way misled to his prejudice by any conduct on the part of defendant or its agent, or that defendant was guilty of any negligence or inexcusable delay in acting upon the insurance application.

Plaintiff contends that the court erred in dismissing his amended petition for the reason that he "states a cause of action against the defendant by the facts alleged in his petition", and that "defendant, by its actions, is estopped to deny the contract of insurance and its liability thereon."

The sole argument of plaintiff is that defendant's retention of Carl's deposit after his death created an estoppel on the part of defendant to deny that a contract of life insurance was effected, or amounted to a waiver of the requirement of formal acceptance of the insurance application.

Plaintiff in his brief has, in general, described his theory as estoppel, but it is difficult to determine whether his argument is based solely on estoppel or is intended to include an argument of waiver. However, in our opinion, under no theory has he alleged facts which, if proved, would establish a contract of insurance.

The question now before us has been considered many times by our appellate courts. Perhaps the leading case is that of State ex rel. Metropolitan Life Ins. Co. v. Shain, 334 Mo. 385, 66 S.W.2d 871.

In that case the plaintiff sought to revive a lapsed policy on her husband's life by paying up back premiums at a time when the husband was on his deathbed. The husband died without having executed the health certificate required by the company on re-instatements. The plaintiff testified that there was no tender back of the money which she paid to defendant's agent until suit was brought, which was more than three and one-half years after the premium payment was made. She argued that by retaining these premiums the defendant ratified the act of the agent in receiving the money and waived the provision of the policy providing for presentation of evidence of sound health and was estopped to claim that such evidence should have been furnished to it. The Supreme Court did not agree with the plaintiff. It stated that a reinstatement of a lapsed policy was in effect a new contract of insurance, and with respect to the argument of waiver the court stated, 66 S.W.2d loc. cit. 875:

"* * * Relator's collector, Shnayerson, testified that at a conference with Mrs. Rainey, after her husband's death, he said to her: 'You can't reinstate no insurance on a dead man'—a simple truth crudely stated. If insurance cannot be reinstated on a dead man, it should follow that waiver of a condition of reinstatement cannot be proved solely by acts of the insurer done after the death.

"In the instant case there was not, during the lifetime of the deceased, the slightest evidence of an intentional relinquishment by relator of a known right, as a waiver is defined to be in the Schwab Case. The intention of the insurer to waive the second condition to revival of the policy does not plainly appear, nor do the acts or conduct of the insurer relied upon to constitute waiver involve any element of estoppel. * * *."

In discussing the above case in State ex rel. Mutual Life Ins. Co. of Baltimore v. Shain, 339 Mo. 621, 98 S.W.2d 690, 693, the court said: "The basic holding of that case was that a plaintiff does not, by merely showing lack of tender, make a case proving a valid contract, either by ratification or waiver."

The State ex rel. Mutual Life Ins. Co. of Baltimore v. Shain case, supra, also said: "In the State ex rel. Kansas City Life Ins. Co. [v. Allen] Case, [337 Mo. 770, 85 S.W. 2d 886] no policy was delivered to the insured before his death, but there 'his application was accepted by the company and the policy issued and sent to the agent for delivery more than two weeks prior to the time appellant became ill. The non-delivery of the policy was not the fault of the insured. The company did not cancel the policy when it learned of the applicant's illness.' Nevertheless, this court said, 'if there was no contract of insurance at the death of Wood, none could have been brought into existence by the acts of the company as proven in this case. The opinion in the Shain Case so holds. (State ex rel. Metropolitan Life Ins. Co. v. Shain, supra.)" (Italics ours.)

The case of Fernan v. Prudential Ins. Co. of America, Mo.App., 162 S.W.2d 281, also involved an attempt on the part of a plaintiff to show creation of a life insurance contract by waiver. In that case the defendant issued a policy but withheld delivery pending the execution of a health certificate by the proposed insured. Before the health certificate was executed the proposed insured died. The plaintiff contended, however, that the defendant waived any defense it might have had by its conduct after the proposed insured's death in entering into negotiations with plaintiff's attorneys. The court rejected this reasoning stating, 162 S.W.2d loc. cit. 286:

"If there was no contract when Mr. Smith died, nothing that defendant did subsequent to his death could aid plaintiff's case in any way, because one cannot create a contract by waiver or estoppel. Rowland v. Missouri State Life Ins. Co., Mo.App., 48 S.W.2d 31; Shepard v. Metropolitan Life Ins. Co., 231 Mo.App. 148, 99 S.W.2d 144; Rosenberg v. General Accident Fire &

Life Assur. Co., Mo.App., 246 S.W. 1009; Mitchell v. American Mut. Ass'n, 226 Mo.App. 696, 46 S.W.2d 231; Berry v. Massachusetts Bonding & Ins. Co., 203 Mo.App. 459, 221 S.W. 748; Freedman v. Mutual Ben. Health & Accident Ass'n, Mo.App., 119 S.W.2d 1017. This doctrine was approved by our Supreme Court in McLain v. Mercantile Trust Co., 292 Mo. 114, 237 S.W. 506, and State ex inf. Shartel ex rel. City of Sikeston v. Missouri Utilities Co., 331 Mo. 337, 53 S.W.2d 394, 89 A.L.R. 607." (Italics ours.)

The cases cited by plaintiff on waiver and estoppel are clearly distinguishable from the case at bar.

Plaintiff relies most heavily on the case of Rhodus v. Kansas City Life Ins. Co., 156 Mo.App. 281, 137 S.W. 907, 909. In that case the applicant gave his note for the full first premium at the time of his application for life insurance. The defendant's agent then sold the note, but by some means got it back again. A month after the application and note were taken and before the application was acted upon, the applicant died. The agent, with knowledge of the applicant's death, then negotiated the note, appropriated his commission, and forwarded the remainder of the proceeds to the defendant, who retained the same after learning of the applicant's death. The court said that the acts of the agent meant "that he recognized an existing, completed contract of insurance", and that the defendant, by accepting the premium with full knowledge of what it was for and of the insured's death, adopted the agent's acts as consummating a contract of insurance without a formal approval of the action by the medical director or the issuance of a policy. The facts in the Rhodus case go far beyond the allegations contained in plaintiff's second amended petition in the instant case. In the instant case there is no allegation that the full first premium was paid, and there is no allegation that defendant's agent ever claimed or collected a commission. In particular, in the case at bar, there is no allegation that defendant's agent had knowledge of the death of the proposed insured

when he cashed the check, or that defendant in allegedly receiving the deposit had knowledge of his death.

The cases of Mitchell v. Washington Fidelity National Ins. Co., Mo.App., 81 S.W.2d 377; Reed v. Bankers' Union of the World, 121 Mo.App. 419, 99 S.W. 55, and Francis v. Supreme Lodge A.O.U.W., 150 Mo.App. 347, 130 S.W. 500, also cited by plaintiff, all concerned the question of whether or not a policy had lapsed and not the question of whether a policy had ever been issued. No mention of estoppel appeared in any of these cases. Each case discussed waiver only with respect to whether the insurance company had waived its right to insist on a forfeiture of the policy by its acceptance and retention of over-due premiums. Thus in these cases, waiver was being applied with respect to rights *under existing contracts and was not being used for the purpose of creating new contracts.*

In the case of Beswick v. National Casualty Co., 206 Mo.App. 67, 226 S.W. 1031, a policy of accident insurance was actually issued and delivered to the plaintiff, and the sole question before the court concerned the effective date of the policy. The agent of defendant had not only told the plaintiff that the insurance would begin on the date the application was signed and the note given, but the agent actually filled in the receipt for the annual premium and specified thereon the date to which such payment would carry the policy. The only estoppel discussed by the court concerned the question as to whether the company in retaining the premium ratified the agent's act and waived the provision of the application with respect to the time at which the insurance should become effective.

In Zielinski v. General American Life Ins. Co., Mo.App., 96 S.W.2d 1059 also cited by plaintiff, the court held that mere delay by the insurance company in passing upon an application for life insurance would be insufficient in and of itself to warrant the inference of an acceptance of the application, absent the showing of facts and circumstances giving rise to an estoppel or waiver in the nature of an estoppel on the

insurance company's part to assert that the application was not in fact accepted and approved by it. This case does not support plaintiff's theory in the case at bar. There are no grounds of estoppel alleged in plaintiff's second amended petition. There are no allegations in plaintiff's second amended petition of any negligence or inexcusable delay on the part of defendant in passing upon the application of Charles E. Carl.

In our opinion the learned trial court correctly ruled that the amended petition fails to state a cause of action against defendant.

The judgment is affirmed.

All concur.