Betty Jean Kirschner WOLTERS, Appellant,

v.

PRUDENTIAL INSURANCE COMPANY OF AMERICA, a corporation, Appellee.

No. 16810.

United States Court of Appeals Eighth Circuit.

Nov. 22, 1961.

Fred E. Schoenlaub, St. Joseph, Mo., for appellant.

Henry G. Eager, Kansas City, Mo., for appellee, Swanson, Midgley, Jones, Blackmar & Eager, Kansas City, Mo., and John

C. Landis, III, St. Joseph, Mo., on the brief.

Before SANBORN, MATTHES and RIDGE, Circuit Judges.

RIDGE, Circuit Judge.

Three hours after alleged insured in this case made partial application to defendant, on behalf of himself, his wife and children, for insurance on a family life plan, he was killed in an automobile accident. Plaintiff, as a co-insured and sole beneficiary named in such application for insurance, commenced this action in a court of the State of Missouri to recover from defendant a principal sum of $69,800.00, with interest, and statutory penalty and attorney's fees for defendant's alleged "wilful and vexatious refusal to pay" that sum to her. Removal of that action to the District Court for the Western District of Missouri was duly perfected. Diversity of citizenship and requisite amount in controversy are established in the record.

■, ■ The facts giving rise to the above claim are not in dispute. The legal issues decisive thereof are controlled by Missouri law. The experienced, competent and seasoned District Judge to whom such issues were submitted concluded that under applicable Missouri law, "no contract of insurance ever existed between the (deceased) and the defendant, and that defendant's subsequent conduct was not such as to render (defendant) liable to plaintiff by waiver or estoppel" as plaintiff here contends. This Court has consistently refused to "attempt to outpredict, outforecast or outguess a trial judge with respect to a doubtful question of the law of his State." Homolla v. Gluck, 8 Cir., 248 F.2d 731, 733. In the case at bar it is clear that District Judge Duncan neither misconceived nor misapplied Missouri law to the facts in this case in reaching the above conclusion. Hence the only question for our consideration in this appeal "is not whether the trial court has reached a correct conclusion but whether it has reached a permissible one" under local state law. Ho-

molla v. Gluck, supra, at 734. The burden of demonstrating that proposition "is a peculiarly heavy one" and in resolving the same it should be kept in mind that "(t)his Court is not an appellate court of the State of Missouri and establishes no rules of law for that State." National Bellas Hess, Inc. v. Kalis, 8 Cir., 191 F.2d 739, 741, cert. den. 342 U.S. 933, 72 S.Ct. 377, 96 L.Ed. 695.

[3-6] ■ a memorandum opinion (filed of record but not published) Judge Duncan made written "Findings of Fact" and stated his "Conclusions of Law" in this case, thus:

"On June 21, 1958, the deceased Jasper J. Kirschner, was a member of the Armed Forces of the United States, and stationed at Whitman Air Base near Warrensburg, Missouri. The plaintiff and their three minor children lived in St. Joseph, Missouri.

"On the above date the decedent came home on a week-end furlough and was contacted by Harry E. Darnell, a soliciting agent of the defendant who knew the deceased and his family because of other insurance policies of a different type they held with the defendant company.

"Sometime after 8:30 o'clock on the evening of this day, the decedent signed an application for a family policy which provided for benefits in the basic amount of $5,000.00 upon the life of said Kirschner, double indemnity for accidental death benefits in the amount of $5,000.00 on Kirschner, twenty-year decreasing term insurance benefits on his life payable in installments of $125.00 per month, term insurance benefits of $1,422.00 on Mrs. Kirschner, and further term benefits of $1,000.00 on each of the three minor children. The present commuted value of the twenty-year decreasing term insurance provision was $24,800.00.

"At the time the application was signed, a conditional receipt was given to the deceased, signed by the agent, H. E. Darnell. Under the nature of the insurance, as shown by the conditional receipt, it was necessary in obtaining a policy of

insurance of this type that a medical examination of those to be covered under the proposed policy be had.

"Agent Darnell says that before he left the home of the deceased on the evening the application was signed, they discussed the question of when such a physical examination could be had; discussed the names of doctors who could make such examination, and that it was agreed that Dr. Waggoner, the Kirschners' family physician, would make such examination, and that the deceased would present himself to the doctor the following week-end when he returned on another furlough from his duties at his military post. There is no dispute about this fact. At the time the application was signed, a check was given, signed by Mrs. Kirschner, in the sum of $20.84 covering the first full monthly premium.

"Kirschner left his home in St. Joseph about 12:30 a. m. on the morning of June 22, 1958, to return to his post of duty. About forty-five minutes later he was killed in an automobie accident in Platte County, Missouri. The agent Darnell learned of his death Sunday afternoon of the day he was killed. He communicated this information to his district manager at St. Joseph and asked directions as to what disposition he should make of the application and the premium check which he had in his possession. He was instructed by his district manager to handle the matter in the usual manner on Tuesday when he made his regular report to the office.

"In conformity to the above instructions, on Tuesday he submitted the application to the Claims Division of the company at Houston, Texas, and the check was endorsed and deposited in the district office's temporary suspense bank account in which all new business premiums were retained, prior to the acceptance of an application and the issuance of a policy.

"Upon receipt of the application by the Claims Department in the Southwest Division in Houston on June 26, that office called the home office representative, Joseph Sherman, in Kansas City and instructed him 'to investigate the death of Jasper Kirschner carefully for any medical history and to handle it as a short claim * * * a short claim was one that was designated as such inasmuch as the death had occurred prior to the expiration of the contestable period.'

"On either June 23 or 24, Darnell contacted the widow, who filled out a claim form for the proceeds of another policy with this company on the life of the deceased. At this time, nothing was done about a claim under the present application.

"Later on June 30, Sherman, the adjuster, visited Mrs. Kirschner with Darnell. It was at this time she signed the claim for the insurance under this application and also an authorization for the defendant to check into the medical records of the deceased.

"Following instructions from the Houston Office and following the usual, customary procedure, Sherman then began investigating the nature of Kirschner's death. He discussed with neighbors and others having knowledge of Kirschner and the Kirschner family, their states of health, and made a report of his investigation on July 1, which was mailed to the Southwest Division Office at Houston, Texas.

"The investigation apparently revealed no physical defects of the applicant, but it did reveal that the wife was suffering from a rheumatic heart condition. In paragraph 12 of the Agreed Statement of Facts, it is stipulated that the plaintiff had a systolic heart murmur, and that she was not then insurable for this plan, rate and amount of insurance under the defendant's applicable and usual underwriting practices without some other inquiry or record in addition to Kirschner's application.

"It is, however, further stipulated, and the evidence reveals, that at a later time, December 23, 1958, defendant issued to the plaintiff its family policy which was apparently identical in terms to the policy described in the deceased's application, except that the amounts were substantially less.

"After the receipt by the company of Sherman's July 1 report, it denied liability and so notified the widow by returning the premium. The return of the premium was not made until July 24, at which time a check was drawn on the district office of the company at St. Joseph in the sum of $20.84 payable to Mrs. Kirschner. Agent Darnell delivered the check to her, and it was cashed by her on August 7. Apparently nothing further was done in the matter until the bringing of this suit.

"At the time the premium was returned to plaintiff, according to the testimony of both the plaintiff and the agent who advised her of the denial of liability, no reason for the refund was given. The agent told the widow that he did not know why the company had denied liability. However, it is established that the company denied liability because of its contention that no contract of insurance had been entered into.

"It is the contention of the plaintiff that by those acts the defendant is estopped to deny the existence of the contract; that its handling of the 'death claim as any other claim would be handled recognized the existence of such a contract; that it was the equivalent of a waiver of the required medical examination.

"Just why the defendant handled the claim as it did certainly can have no basis in either business or legal principles. Why, under the circumstances, the defendant did not immediately return the premium check to the plaintiff and advise her that there was no contract of insurance entered into, and no liability thereunder, rather than handling it as any other claim has not been made to appear. There is some attempt in the brief to justify it, but with due respect, such attempt does not carry conviction.

"Unless the manner in which the claim was handled and the retention of the premium estops the defendant from denying the existence of a contract, it is not liable.

"As heretofore stated, the evidence conclusively shows that at the time of the signing of the application and the giving of the conditional receipt, it was definitely understood that a physical examination was necessary before any coverage would attach. I think it may reasonably be inferred that it was not absolutely necessary that a policy of insurance issue if certain other conditions of the receipt were met.

"No contract of insurance was created by the signing of the application and the acceptance of the first monthly installment of the premium and the giving of the conditional receipt therefor.

"I think it may be stated without successful legal contradiction that a contract of insurance cannot be created by waiver or estoppel. Porter v. Farm Bureau Life Ins. Co. (Mo.App.) 322 S.W.2d 927; Fernan v. Prudential Ins. Co. (Mo.App.) 162 S.W.2d 281; Mitchell v. American Mutual Ass'n, 226 Mo.App. 696, 46 S.W. 2d 231.

"The subsequent acts of the company must show that it recognized the existence of a contract of insurance created earlier by following a course of conduct inconsistent with the claim that no contract ever existed. Carpenter v. St. Joseph Life Ins. Co., 212 Mo.App. 336, 246 S.W. 623; Zielinski v. General American Life Ins., (Mo.App.) 96 S.W.2d 1059; Mitchell v. American Mutual Ass'n, 226 Mo.App. 696, 46 S.W.2d 231; Carpenter v. St. Joseph Life Ins. Co., 212 Mo.App. 336, 246 S.W. 623; Rhodus v. Kansas City Life Ins. Co., 156 Mo.App. 281, 137 S.W. 907. In this case there is no contention that any contract existed prior to applicant's death.

"We are confronted with the rather unusual situation in this case in that the instructions to the adjuster were to handle the claim as any other claim would be handled. During all of this period the defendant knew that no policy of insurance had been issued; that no application had been submitted to it for acceptance or rejection before Kirschner's

death, and that there had been no medical examination in accordance with the very definite and specific requirements both of the application and the conditional receipt.

"Certainly, if the application had been submitted and been acted upon without any medical examination as required therein, and death had occurred before issuance of the policy and the conduct of the company with respect to a claim had been such as it was in this case, I think there could be no question but that the company would be estopped to deny liability. That would definitely be a waiver of the requirement of a medical examination, but that is not the case here.

"The evidence here shows that the application was signed about 10:30 on Saturday night and the applicant was killed at 1:15. Not only had there been no medical examination, but no submission of the application to the company for its consideration under any circumstances, with or without a medical examination. The agent was simply a soliciting agent and had no authority to bind the company, even if he had desired to do so.

"Plaintiff relies upon Bell v. Missouri Life Ins. Co., 166 Mo.App. 390, 149 S.W. 33; Carl v. National Fidelity Life Ins. Co. (Mo.App.) 277 S.W.2d 871; Carpenter v. St. Joseph Life Ins. Co., 212 Mo. App. 336, 246 S.W. 623; Rhodus v. Kansas City Life Ins. Co., 156 Mo.App. 281, 137 S.W. 907; State ex rel. Mutual Life Ins. Co. of Baltimore v. Shane, 339 Mo. 621, 98 S.W.2d 690; Wood v. Kansas City Life Ins. Co., 228 Mo.App. 979, 75 S.W. 2d 412.

"The only one of the above cases which seems comparable to this case factually is Rhodus v. Kansas City Life Ins. Co., supra. In that case the application was signed but never acted upon. No policy of insurance was ever issued; a note for the first premium was given to the soliciting agent, and he apparently discounted the note at the bank. Some time later and after the applicant's death, some of deceased's relatives, apparently in collusion with the agent, obtained the note

and paid the amount of the principal to the agent who in turn paid the company's portion to it and retained his own commission.

"The company accepted the agent's check not knowing of Rhodus' death, but the company retained the premium after learning of his death and still retained it at the time of the suit. There the court held that the facts created a submissible case as to whether or not there was a contract of insurance between the parties, and judgment for plaintiff was affirmed.

"A reading of the other cases will reveal a different state of facts. The trend of the courts since the Rhodus case, is to get away from the rigid rule that was adopted in that case. For example, in Carpenter v. St. Joseph Life Ins. Co., supra, the facts were much more favorable to the plaintiff than in this case. There the policy of insurance had been issued, registered with the state insurance department, and delivered to the agent, who sought to deliver it to the insured but was unable to do so because he was absent from home. Before he had an opportunity to deliver it to the applicant, the applicant had died. There the court denied recovery.

"Ordinarily, mere delay in return of the premium is not sufficient to create estoppel. Porter v. Farm Bureau Life Ins. Co., Mo.App., 322 S.W.2d 927; Carl v. National Fidelity Life Ins. Co., (Mo. App.) 277 S.W.2d 871; State ex rel. Metropolitan Life Ins. Co. v. Shain, 334 Mo. 385, 66 S.W.2d 871.

"In order to create estoppel, failure to deliver the premium within a reasonable time must have resulted in some damage to the insured or to the party who is entitled to receive the proceeds. Summers v. Prudential Ins. Co., Mo.App., 337 S.W. 2d 562.

"In view of the facts, I must conclude that no contract of insurance ever existed between the applicant and the defendant, and that defendant's subsequent conduct was not such as to render it liable by waiver or estoppel.

"The finding of the court must therefore be and is for the defendant."

The facts so found by Judge Duncan are sustained by the record before us and we adopt his statements as our own.

Appellant's singular challenge made to the judgment entered in favor of defendant-appellee on the findings of fact and conclusions of law, supra, is as follows:

"Upon the signing of Part I and Part II of Appellee's Application for Insurance, and payment of the full first premium, a contract of insurance came into existence between Jasper J. Kirschner and Appellee, insuring the life of Jasper J. Kirschner until such time as said application could be finally approved and a policy of insurance issued.

"The acts of Appellee subsequent to the death of Jasper J. Kirschner constituted recognition by Appellee of the existence of a contract of insurance and an adoption of the acts of its agent, Harry E. Darnell, as consummating the contract."

The only authority cited and relied on by appellant to sustain the above proposition, not cited and considered by Judge Duncan in his memorandum opinion supra, is Prudential Insurance Company of America v. Burch, 8 Cir., 1959, 268 F.2d 159, a case in which plaintiff says the leading Missouri cases were reviewed by this Court when we were "called upon to interpret Part I of the application of this same (appellee) company, and specifically, language almost identical to that" contained in the "Conditional Receipt" given to Kirschner when the first premium was paid. The Burch case supra is clearly distinguishable on its facts and applicable state law from those found in the case at bar. That such case lends no support to apellant's contention as above made is patently clear from a consideration of these facts found to exist in the Burch case. There, Fisher, the insured, had taken his medical examination and the two parts of his application, including the physician's report, which constituted his entire application for insurance, was "sent to the company and the company determined to its satisfaction that the proposed assured was insurable on the date of either Part 1 or Part 2, whichever was the later. * * *." (268 F.2d l. c. 163) A policy "dated August 19, 1955" was issued and delivered to the insured. The issue there was as to the effective date of the policy. The Court in the Burch case said, at l. c. 168: "The only contingency awaiting 'effective' coverage here was approval by the company" of Fisher's application "and, clearly, after such approval on August 17, 1955, coverage was in effect from July 20, 1955." In the case at bar, Kirschner, the proposed insured, was never examined by a physician. It is not disputed that he knew he was to submit to a physical examination by a physician before his application for insurance would be completed. Had he been so examined, he would have been required to sign the "Examining Physician's Confidential Report" as being the "person examined," thereby declaring "that all the statements and answers to the * * * questions (therein were) complete and true and agree that the (same) together with his declaration shall form a part, designated as Part 2, of the application for insurance." He did not perform that act precedent to completion of his application for insurance. As a consequence, his application for insurance was never completed by him or approved by appellee.

"An application for insurance is but an offer, and does not become a completed contract until it is accepted by the insurer, and until all conditions precedent to be performed are complied with. * * * If there was no contract when (Mr. Kirschner) died, nothing that defendant did subsequent to his death could aid plaintiff's case in any way, because one cannot create a contract by waiver or estoppel." Fernan v. Prudential Ins. Co. of America (Mo. App.) 162 S.W.2d 281, 283 & 286.

That is what appellant is attempting to do under the facts of this case. That, she cannot do under Missouri case law.

We have read and considered each of the Missouri authorities cited by Judge Duncan to support his memorandum supra, as well as those relied on by appellant here. No useful purpose would be served in extending this opinion by stating a conspectus of the issues therein and making a comparison thereof with those in the case at bar. It is sufficient to say that we are satisfied that the District Court in this case has correctly applied Missouri case law to the facts here.

Therefore, the judgment appealed from should be, and the same is, affirmed.